THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOEL JACKSON, Defendant-Appellant.

Second District   No. 85—0088

Opinion filed January 24, 1986.

Daniel D. Yuhas and Judith N. Kirby, both of State Appellate Defender's Office, of Springfield, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Robert J. Biderman and Rebecca J. White, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

On January 24, 1985, after a jury trial in the circuit court of Winnebago County, the defendant, Joel Jackson, was found guilty of residential burglary and sentenced to an extended term of 18 years' imprisonment. On appeal defendant argues: (1) that his guilt was not proved beyond a reasonable doubt; (2) that the residential burglary statute is unconstitutional; (3) that he was denied a fair trial by the prosecutor's closing remarks; and (4) that the trial court improperly considered two aggravating factors to impose an extended term sentence and abused its discretion in sentencing him to 18 years' imprisonment.

During the late evening hours of June 1, 1984, the home of Mrs. Ethel Adams, 3543 Robey Avenue in Rockford, was burglarized. Mrs. Adams arrived home at 11 p.m. to find the police already at her home. Mrs. Adams testified that a Kodak 4000 disc camera, a package of SX-70 Time Zero Polaroid film, portable television, police scanner, microwave oven and telephone had been taken. The microwave oven was found that night in her backyard and was returned to her by the police. Mrs. Adams noticed at that time that the oven had small dots all over it. The television, police scanner and telephone

were found the following day in a neighbor's yard and were also returned to Mrs. Adams.

Adams' next door neighbor, Judy Allman, testified that she walked her dog at 10:45 p.m. on the night of the burglary and that on her way back to her house she saw several items behind a tree near her back porch, between her house and the Adams house. Allman then returned home and observed a blue car back up from in front of the Adams house to the front of her house. After a few minutes a man got out of the car, approached her house and asked her where Robey Avenue was. Allman told him he was on it and that he knew it. The man then returned to the car, made a U-turn, and left. Allman did not get a good view of the man's face and could describe him only as a black male wearing all-dark clothing. The police arrived several minutes later and found that the items behind the tree were gone.

Mark Webb testified that he was walking on a street called Normandy between 10:45 and 11 p.m. on the night of the burglary. Normandy runs parallel to Robey Avenue and is one block east. While walking, Webb observed two men walking towards him between two apartment buildings between Robey and Normandy. The first man walked "up" Normandy to a car and then drove "down" Normandy with the lights off. The second man walked across Normandy and was then picked up by the first man. Webb could not identify either man and described them only as two black males, both wearing dark clothing. Webb described the car as a blue AMC and said the "biggest" thing he remembered about it was that "it had a double white pinstripe running along the top of the quarter panel, up along the top edge of the car." Webb also saw the car's license number which he later told police.

Officer Kenneth Carner of the Rockford police department was on patrol that night in the area of the burglary. At about 10:45 p.m. he observed two men walking towards Robey on River Bluff between Robey and Normandy. Carner described one man as black, 17 to 20 years of age, 5 feet 10 inches tall, 140 pounds, and wearing a blue T-shirt and dark pants. Carner described the other man as black, 16 to 17 years of age, 5 feet 6 inches to 5 feet 7 inches, 130 pounds, and wearing a black T-shirt and dark pants. At 10:55 p.m. Carner responded to the report of the Adams burglary.

Deputy Donald Hahn of the Winnebago County sheriff's department testified that he stopped two black males in a blue AMC Pacer at 11:50 p.m. that night in response to a radio broadcast about a suspect vehicle in the Adams burglary. The occupants were defendant (driver) and George Huggins (passenger). Hahn described defendant

as wearing a black T-shirt with black or dark blue pants, and Huggins as wearing a dark blue T-shirt with dark green pants. Defendant, who did not have a driver's license, gave Hahn his brother's driving permit, which was in the glove box. Hahn requested that both men remain in their car. Approximately 10 to 15 minutes later, a second police car arrived, and Hahn again approached defendant's car and requested that defendant and Huggins walk back to his squad car.

While walking back to the police car, defendant fled into an open field and was not apprehended that night. The police found a Kodak 4000 disc camera and a package of SX-70 Time Zero Polaroid film between the front bucket seats of the AMC Pacer and two pairs of gloves in the glove box.

Officer Paul Muenkel of the Rockford police department testified that he assisted in the burglary investigation at the Adams house. Muenkel stated that he examined an ashtray found on the floor in the Adams house and discovered it had small dots on it. The dots were similar to those that might be made by one of the pairs of gloves found in the glove box of the defendant's car. Mrs. Adams testified that no one in her household had gloves of that type.

After the State rested and defendant's motion for a directed verdict was denied, defendant called his first witness, 14-year-old Michelle Busby, who had known defendant for three or four months. Michelle testified that defendant arrived at her house between 7 and 8 p.m. on the night of the burglary and stayed until 11 or 11:25 p.m. Bernice Busby, Michelle's 15-year-old sister, testified that she saw defendant at her house at 8 p.m. and that he was still there when she left at 10:30 p.m. to babysit for a relative. Bernice's testimony as to when she last saw defendant was contradicted, however, by her earlier statement on October 11, 1985, to Ann Marie Davis, an investigator for the public defender's office, that she left for babysitting at 10 p.m.

Defendant took the stand on his own behalf and testified that he arrived at Michelle's house at about 8:10 p.m. and left about 11:25. He had arrived on his bike but left walking because Michelle's younger sister, Litisha, had his bike. Defendant stated that while on his way home his brother and George Huggins picked him up in his mother's car, a blue AMC Pacer. After arriving home, defendant's brother got out of the car and defendant drove Huggins home. After arriving at Huggins' residence, Huggins went into the house. Huggins returned five minutes later and asked defendant if he wanted to go get some pizza and defendant said yes. While driving to get pizza, defendant was stopped by the police. Defendant admitted running from the

police after the second police car arrived but said he did so because he was afraid his brother's driving permit would not check out. Defendant testified that he did not see any camera or film between the front seats. Defendant turned himself into the police on June 18, 1984.

■ Defendant's first argument is that the State failed to prove his guilt beyond a reasonable doubt. Specifically, defendant argues that "assuming *arguendo* that the permissive inference arising from the unexplained possession of recent stolen property" applies, the State failed to present any corroborating evidence that he committed the burglary and failed to exclude every reasonable hypothesis of innocence.

While exclusive and unexplained possession of recently stolen property is insufficient, standing alone, to prove burglary beyond a reasonable doubt, it may be used with other corroborating evidence of guilt to support a conviction. (*People v. Jones* (1985), 105 Ill. 2d 342; *People v. Housby* (1981), 84 Ill. 2d 415, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160.) Further, when the evidence of defendant's guilt is entirely circumstantial, as in the present case, the facts proved must be consistent with defendant's guilt and inconsistent with any reasonable hypothesis of innocence. *People v. Evans* (1981), 87 Ill. 2d 77, 83.

■ In the present case the State did present corroborating evidence. First, Allman, Webb and Carner each observed two black males dressed in dark clothing in the area at the time of the burglary, and Webb saw the two men driving a blue AMC car. While none of the witnesses could positively identify defendant as one of the men they saw, defendant was stopped an hour later with Huggins in a blue AMC Pacer, and both men were wearing dark clothing similar to that described in detail by Carner. Second, the gloves found in defendant's car were of the type that would leave a pattern of dots such as those found on the ashtray and microwave oven. Third, defendant admitted that he fled from the police when stopped by the police just over an hour after the burglary was committed. Defendant's flight tends to show his consciousness of guilt (*People v. Terrell* (1984), 99 Ill. 2d 427, 433; *People v. Harris* (1972), 52 Ill. 2d 558, 561), and is corroborative evidence to support his conviction under *Housby* (*People v. Mallette* (1985), 131 Ill. App. 3d 67; *People v. Moore* (1981), 98 Ill. App. 3d 507). Fourth, the fact that defendant presented an explanation of possession that the jury reasonably found to be false is also corroborating evidence. *People v. Housby* (1981), 84 Ill. 2d 415, 430.

As to excluding every reasonable hypothesis of innocence, defendant testified at trial that he was at a friend's house at the time of the

burglary and that he was picked up by his brother and Huggins in the blue AMC Pacer as he was walking home later. Defendant's story, if believed, would imply that his brother and Huggins committed the burglary and that he was an innocent victim of circumstance when he later got into the car. The fact that defendant fled from the police when he was later stopped, however, tends to show a consciousness of guilt (*People v. Terrell* (1984), 99 Ill. 2d 427, 433; *People v. Harris* (1972), 52 Ill. 2d 558, 561), which contradicts his account of events. Defendant argues that he fled because he did not have a valid driver's license, but the jury was free to disregard his explanation in light of the fact that defendant did not flee immediately, but, instead, attempted to use his brother's driving permit and fled only after a second police car arrived, indicating to him that the police suspected him in a more serious offense.

■ Defendant's second argument is that the residential burglary statute (Ill. Rev. Stat. 1983, ch. 38, par. 19—3) and its related sentencing provisions (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—5—3(c)(2), 1005—8—1(a)(4)) are unconstitutional. However, since the time defendant filed his brief, our supreme court has upheld the validity of the residential burglary statute and its related sentencing provisions (*People v. Bales* (1985), 108 Ill. 2d 182), and we, therefore, reject defendant's arguments for the reasons stated in that opinion.

■ Defendant's third argument is that he was denied a fair trial by several of the prosecutor's closing comments. The first three comments defendant objects to occurred during the State's closing argument in which the prosecutor stated:

"You saw the defendant's manner while testifying yesterday. And also Bernice and Michelle Busby. They were lying. It was all over their faces. It was all over their stories.

\* \* \*

Oh, the State's witnesses could have lied and sweetened up this case a great deal. But if any of you are like me and you are sitting here just as I was, you saw in their faces that they were trying to tell you the truth. They were telling you the truth. Their testimony is reasonable and makes sense.

\* \* \*

If he [the defendant] wants to point his finger at his brother saying he committed the burglary, which is what I think he's doing, his brother committed the burglary, don't you think he would have taken the stuff with him when he got out of the car, \* \* \*."

Defendant argues that by these comments the prosecutor repeatedly

and improperly expressed his own opinion as to the credibility of the witnesses and that there is no indication from the record that the prosecutor was relying on the evidence.

A prosecutor may state his opinion that a defendant or defense witness is lying if the statement is based on the evidence or reasonable inferences therefrom. (*People v. Tiller* (1982), 94 Ill. 2d 303, 319, *cert. denied* (1983), 461 U.S. 944, 77 L. Ed. 2d 1302, 103 S. Ct. 2121; *People v. Starks* (1983), 116 Ill. App. 3d 384, 394; *People v. Adams* (1982), 106 Ill. App. 3d 467, 474.) A prosecutor may also support the credibility of the State's witnesses if his opinion is based on the evidence or reasonable inferences therefrom. (*People v. Grigsby* (1982), 111 Ill. App. 3d 38, 46; *People v. Anderson* (1981), 95 Ill. App. 3d 492, 495-96.) Contrary to defendant's argument, our review of the record shows that the prosecutor's comments were drawn from the facts in evidence or constituted reasonable inferences drawn therefrom. In making the quoted comments, the prosecutor reviewed the evidence in the record, including: (1) prior inconsistent statements by defense witnesses, (2) defense witness bias, (3) alleged inherent unbelievability of defendant's testimony, and (4) the lack of State witness bias.

■ The second three comments which defendant objects to occurred during the State's rebuttal argument when the prosecutor stated:

"He turned himself in. I guess we should give him a medal for turning himself in. Big deal if he turned himself in. It means nothing to this case. Not one thing.
                    * * *
We must prove the defendant guilty beyond a reasonable doubt. We do not have to prove the defendant guilty beyond all doubt.
                    * * *
It's our future, too. All of ours. To be free from having our houses broken into."

Defense counsel objected to each of these three statements and the court sustained each objection. The court also specifically told the jury to disregard the statement after the first and third objections. We find that the court's rulings on the objections and its instructions to disregard corrected any error in the argument. *People v. Williams* (1983), 97 Ill. 2d 252, 305-06, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 3563; *People v. Lion* (1957), 10 Ill. 2d 208, 216.

■ Defendant's fourth argument on appeal is that the trial court failed to make the necessary finding to support the imposition of an extended-term sentence, that it improperly considered two aggravating factors in sentencing defendant to an extended term of imprison-

ment, and that its sentence of 18 years' imprisonment was an abuse of discretion in light of defendant's youth and the fact that the burglary did not result in any violence or threat of violence to others.

In order to impose an extended-term sentence, the trial judge must first determine that one of the factors listed in section 5—5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)) is present. One factor listed in section 5—5—3.2(b) is:

> "(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; ***." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(1).)

In the present case the trial court found this factor to be present, stating:

> "THE COURT: Thank you. Before I ask counsel for their comments, I just want to clarify for the record that the conviction is for residential burglary. The Defendant has a prior felony conviction in April of '82 for attempted armed robbery. My reading of the statute is that would be considered a Class I felony.
>
> MR. TORRISI: I'm in agreement, Judge.
>
> THE COURT: Are you in agreement, Mr. Pumilia?
>
> MR. PUMILIA: Yes.
>
> THE COURT: That means he is eligible for extended term sentencing.
>
> MR. TORRISI: Yes, sir.
>
> MR. PUMILIA: Right, Your Honor.
>
> THE COURT: Is there a disagreement on that?
>
> MR. TORRISI: No, sir.
>
> MR. PUMILIA: No.
>
> THE COURT: So the sentencing ranges are really four to thirty years.
>
> MR. TORRISI: Yes, sir.
>
> MR. PUMILIA: Correct."

Having found that defendant was eligible for an extended sentence, the trial court went on to consider the factors in aggravation (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(a)), and mitigation (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.1(a)), to determine the proper sentence in the particular case. Defendant argues that it was improper for the trial judge to consider any aggravating factors under

section 5—5—3.2(a) in imposing an extended-term sentence. Defendant relies upon *People v. Frey* (1984), 126 Ill. App. 3d 484. We do not read *Frey*, however, as holding that once the court has found a defendant eligible for an extended-term sentence, it may not consider the normal factors in aggravation and mitigation to determine the exact sentence to impose. Rather, in *Frey* the appellate court reversed and remanded the trial court's sentence because it appeared from the trial court's own statements that it had failed to inform itself of the full range of incarceration alternatives and felt that it was *required* to impose an extended-term sentence based on the defendant's prior felony conviction even if it had reservations about it. These factors are not present in the instant case, since the record makes clear that the trial court knew the extended-term sentencing provisions were discretionary.

■ Defendant also argues that the sentence of 18 years' imprisonment was an abuse of discretion. We note initially that the trial court is normally in a better position to determine the punishment to be imposed than is the court of review. A reasoned judgment as to the proper sentence to be imposed depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. The trial court, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors superior to that afforded by the cold record on review. (*People v. Cox* (1980), 82 Ill. 2d 268, 279-80; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Therefore, a trial court's sentence may not be altered on appeal absent an abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 281; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153.

Defendant has a history of delinquency and criminal activity. In May of 1978 he committed a theft, was adjudicated delinquent and placed in a foster home which he later ran away from. In November of 1979 defendant committed a retail theft and was sentenced to the Illinois Department of Corrections, Juvenile Division. The presentence report states that defendant showed no repentance or remorse after the retail theft and later was defiant, resentful and refused to cooperate with his parole officer prior to having his parole revoked. In December of 1981, just 4½ months after his second release on parole, defendant engaged in an attempted armed robbery in which occurrence a woman was shot. While it is unclear whether that defendant shot the victim, defendant admitted he knew the sawed-off shotgun was in the car in which he and his codefendants had been driving around. In May of 1984 defendant was released on parole, and just 24

days later he committed the residential burglary involved in the present case.

■ While defendant was only 18 years old at the time of the offense and no one was present in the home at the time of the burglary, we cannot say that the trial court abused its discretion in sentencing defendant, taking into account his history of criminal conduct. Defendant's youthfulness is not alone sufficient to justify a reduction of sentence. The nature of the offense, the protection of the public, deterrence and punishment are to be accorded equal status in the sentencing determination. *People v. Darnell* (1981), 94 Ill. App. 3d 830, 838.

For the reason stated herein, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

HOPF and STROUSE, JJ., concur.