THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MANNING JACKSON, Defendant-Appellant.

First District (6th Division)   No. 1—88—1006

Opinion filed May 31, 1991.

Randolph N. Stone, Public Defender, of Chicago (Joseph M. Gump and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Elizabeth A. McDevitt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, Manning Jackson, was found guilty of residential burglary and of robbery. The court sentenced him to an extended term of 30 years for residential burglary, and a seven-year concurrent term for robbery. Defendant contends on appeal that the trial court erred in refusing to grant his trial-day request for a continuance; that the trial court's failure to conduct a *Batson* hearing denied him the right to prove a *prima facie* case of racial discrimination; that the court erred in refusing to give an instruction to the jury that a defendant may waive his constitutional right to be present at trial; that the imposition of an extended sentence for residential burglary was improper; and that the sentence imposed was excessive.

The pertinent facts are as follows. The victim, Nathan Coleman, is afflicted with muscular dystrophy and a speech impediment. The victim shared an apartment with his uncle, Clark Minniefield, at 6401 South Woodlawn, Chicago. On December 1, 1986, the victim left home with defendant, Minniefield and another neighbor, Flossie Kirksey, to go to the currency exchange to pick up the victim's monthly disability check. En route to the currency exchange, the defendant was dropped off at the elevated station at 63rd and University.

The victim testified that he cashed his disability check at the currency exchange and went grocery shopping. The victim kept $76 in cash from the proceeds of the check and gave the remainder to Minniefield. Minniefield then dropped the victim and Kirksey off at the apartment building. Kirksey returned to her own apartment.

The victim stated that his apartment door would not open when he inserted the key, but that the door did open with a gentle push. The victim immediately entered the washroom. Upon exiting the washroom, the victim heard a noise in the kitchen. The victim testi-

fied that the defendant came out from the kitchen toward him, knocked him down, and began hitting him on his chin and face. Defendant took the $76 from the victim's shirt pocket. The victim could not get up, and defendant kicked him in the ribs several times. (The victim sustained a fractured rib.) Defendant took a videocassette recorder and put it into a gym bag before leaving the apartment. The victim heard voices in the hall and recognized the voice of his neighbor, Moses Bell. The victim called out for help, and Bell entered the apartment.

The victim testified that he became acquainted with defendant through the victim's uncle, who also lived in the building. The victim testified that he had known defendant for only a few days and never had a conversation with him prior to this incident. The victim testified that he does not drink alcohol or use cocaine. Defendant had never been in his apartment before.

Moses Bell testified for the State that he entered the apartment and asked the victim what happened to him. The victim replied that "Manny got to me." Bell wiped the blood from the victim's face, and then went over to Kirksey's apartment to call the police.

Chicago police officer Randall Robinson testified that he responded to a radio assignment that a robbery had occurred at 6104 Woodlawn. Robinson entered the victim's apartment and found that it was disorderly; the bed was pushed out and a chair was overturned, and there was blood on the floor. The victim was confused and bleeding from his mouth.

The victim's uncle, Clark Minniefield, testified for the defense that defendant had been present in his apartment with the victim several times, and that they all drank together. Minniefield stated that the victim drinks occasionally, in small amounts, but that he does not use cocaine. Minniefield testified that he owned the videocassette recorder stolen in the robbery.

Defendant testified that he has known the victim for approximately eight years and has been in his apartment several times. Defendant testified that on December 1, 1986, he and the victim arranged to meet back at the victim's apartment to use defendant's cocaine. After the victim picked up his check from the currency exchange, he was supposed to pay defendant for his portion of the cocaine. The victim did not want his uncle to know that he used cocaine.

Defendant further testified that he met the victim and Kirksey in the lobby of the apartment building after Minniefield dropped them off. The three of them rode up in the elevator together. Once inside

the apartment, the victim explained that he did not have the money; that he had given all of his money to his uncle because his uncle did not want him to "drink up" or otherwise waste the money.

Defendant testified that the victim told him that he would give defendant the videocassette recorder in lieu of the money so that he could have the cocaine. Confusion ensued once defendant proceeded to disconnect the videocassette recorder. Defendant stated that as he attempted to put the videocassette recorder into a bag, they struggled over a knife. Defendant received a cut on his hand, and he was bleeding inside the apartment and his blood was on the victim. Defendant stated that he hit the victim and knocked him to the ground, and that he believed that he hurt the victim when he struck him. Defendant tried to help the victim, but the victim was screaming at him. Defendant then left the apartment with the recorder in a gym bag that previously contained the tools for the cocaine.

Defendant stated that he was aware of the victim's disability and that the victim experienced difficulty walking. Prior to the date of the incident, the victim had paid for and used cocaine with defendant on three occasions. Defendant denied kicking the victim.

Flossie Kirksey testified for the defense that on December 1, 1986, defendant was dropped off at the elevated station. Kirksey accompanied the others to the currency exchange to pick up the victim's monthly disability check. Upon returning from the exchange, Kirksey and the victim returned to their respective apartments. Kirksey did not see defendant in the apartment building when she returned with the victim.

The jury rejected the testimony of defendant and accepted that of the victim and found defendant guilty of residential burglary in violation of section 19—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 19—3(a)), a Class 1 felony, and robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—1(a)), a Class 2 felony. Prior to sentencing, the trial judge allowed defendant the opportunity to explain the reason for his absence on the last day of trial. Defendant chose not to offer any explanation. Defendant had no prior convictions.

Kathleen Youngerman testified for the State at the hearing in aggravation and mitigation. She testified that on January 14, 1983, defendant attacked her in the washroom at her place of employment. She stated that defendant punched her in the eye, face, and head; kicked her; threw her to the ground and attempted to remove her pantyhose. As a result of the incident, she received approximately nine stitches in her upper lip, suffered an inner ear concussion, contusions, abrasions, and a hairline fracture above her nose.

Pursuant to section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2), the judge considered the following factors in aggravation applicable under the circumstances: defendant's attack on the victim was conduct that caused or threatened serious harm; that defendant had a history of prior delinquency or criminal activity; and that he should be categorized as a repeat violent offender. The judge found that the beating of the victim, a handicapped person, was accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty" as set forth in section 5—5—3.2(b)(2) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2)). The judge considered the victim a handicapped person within the meaning of section 5—5—3.2(b)(3)(iii) as another factor in aggravation, and that defendant was aware of the victim's disabilities but nevertheless beat and viciously kicked him.

In mitigation, the judge considered the presentence investigation which revealed that defendant grew up in a family of eight children in Chicago. Defendant had never been married, but stated that he had five children from relationships with four women that he supported.

After considering the factors in aggravation and mitigation, the judge sentenced defendant to an extended term of 30 years for residential burglary and a concurrent term of seven years for burglary.

We first consider defendant's argument that he was denied his constitutional right to counsel of choice when the court denied his trial-day request for a continuance to retain private counsel. Defendant contends that he was unaware that his case was set for trial on January 26, 1988. He also maintains that he wanted the victim's neighbor to testify for the defense, but knew only that her first name was Flossie.

The record reveals that the matter had been continued five times prior to the 1988 date. On the day of trial, the assistant public defender informed the court that prior to lunch defendant wanted a jury trial, but after lunch defendant's mother wanted him to hire a private attorney. Defendant had never contacted the assistant public defender about the identity of the witness. The trial court denied the motion for a continuance.

■ It is well established that a trial court's determination of whether to grant a defendant's trial-day request for a continuance to allow time to obtain counsel requires a balancing of the interest in trying a case with due diligence against defendant's constitutional right to counsel of choice. (See *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229; *People v. Washington* (1990), 195 Ill. App. 3d 520, 552 N.E.2d 1067; *People v. Lewis* (1988), 165 Ill. App. 3d 97, 518

N.E.2d 741.) The decision to grant or deny a motion for a continuance lies in the sound discretion of the court. Ill. Rev. Stat. 1985, ch. 38, par. 114—4(e); *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229.

■■ This court has continuously held that where private counsel has been retained or counsel's appearance is on file, it is an abuse of discretion to deny a continuance and to proceed to trial without the presence of defendant's chosen counsel or verifying the claim of employment of counsel. (*People v. Payne* (1970), 46 Ill. 2d 585, 264 N.E.2d 167; *People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116; *People v. Lewis* (1988), 165 Ill. App. 3d 97, 518 N.E.2d 741.) However, in instances where circumstances reveal that a motion for continuance is based on a defendant's desire to retain private counsel, denial of the continuance will be a proper exercise of judicial discretion if new counsel is unidentified or does not stand ready, willing, and able to make an unconditional entry into the case. (*People v. Lewis*, 165 Ill. App. 3d at 103, citing *People v. Elder* (1979), 73 Ill. App. 3d 192, 391 N.E.2d 403.) Where defendant fails to articulate an acceptable reason for desiring new counsel and is already being represented by an experienced, court-appointed criminal lawyer, it is not an abuse of discretion to deny defendant's trial-day request for a continuance. *People v. Mims* (1982), 111 Ill. App. 3d 814, 444 N.E.2d 684.

■■ Applying these principles to the facts in this case, we conclude that the trial court did not abuse its discretion in denying defendant's request for a continuance. Defendant had not taken the preliminary step of identifying private counsel, who was unavailable at the time of trial. Defendant never indicated prior to the afternoon the trial was scheduled to commence that he wanted to retain private counsel, nor did he submit to the court a definite time period within which he would be prepared to proceed to trial. We also note that on November 24, 1987, this case was set for trial on November 26, 1988. Thereafter defendant made no attempt to provide the public defender with the full name of the witness whom he wished to testify in his defense. (It should be noted that Flossie Kirksey testified for the defense at trial.) It is apparent that defendant was merely attempting to delay the trial with his last-minute request. Therefore, we find no abuse of discretion in the court's denial of defendant's desire to retain private counsel.

We find no merit in defendant's next argument that the trial court's failure to conduct a hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 89, 90 L. Ed. 2d 69, 83, 106 S. Ct. 1712, 1719,

constitutes a denial of his right to prove a *prima facie* case of racial discrimination in the State's exercise of its peremptory challenges.

■ An examination of the record reveals how little substance there is in the *Batson* challenge in the present case. At the conclusion of the jury selection, defense counsel stated that he was making a *Batson* motion in order to protect the record. Before the trial court or the State had an opportunity to comment, defense counsel announced that he was mistaken about the composition of the jury, that he was withdrawing his *Batson* motion, and that there was no need for the court to rule on the motion. The judge stated that he had not noticed any *Batson* violation, and swore in the jurors who had been agreed upon. The trial court did not err in not conducting a *Batson* hearing.

Defendant also contends that the trial court erred by refusing to instruct the jury that a defendant in a criminal trial may waive his constitutional right to be present at trial, and that his absence could not be considered in any way in arriving at a verdict.

Initially we note that the judge admonished defendant after he arrived late on the first day of trial. The record indicates that defense counsel informed defendant after the admonishments that he could be tried *in absentia.*

Defendant returned to court on the day following his testimony and asked the court clerk if the defense or State had found Kirksey. When the clerk replied that the State had located Kirksey, defendant remarked that "they got to her already" and asked the clerk the length of the sentence he would receive if found guilty. The judge personally observed the defendant leaving the courtroom with his jacket underneath his arm. The judge proceeded with the trial, concluding that defendant willfully absented himself from the courtroom and the building.

After discussing defendant's departure with the prosecutor and defense counsel, the judge informed the jury of defendant's absence as follows:

> "Ladies and gentlemen, as you can see from looking around the courtroom, the defendant is not here. Now, he was here earlier, but left. We do not know where he is after strenuous attempts to try to find out where he is.
>
> Now, we don't know why he's not here. He was here earlier, but you are not to hold that against him in any way in deciding this case. I have decided, within my discretion, to proceed with the case, notwithstanding his absence, at this time."

Defendant had a case pending in another courtroom; however, the sheriff was unable to locate defendant in that courtroom.

At the conclusion of trial, defense counsel requested an additional jury instruction stating that the absence of the defendant is not to be held against either side. The trial judge denied the request, finding that it was unnecessary to render any additional instruction because the jury had already been informed not to allow defendant's absence to affect its decision. The judge ordered the State to refrain from incorporating into their closing arguments that flight is evidence of guilt.

■ Defendant's attempt to draw an analogy between the constitutional right not to testify in one's own behalf at trial to the right to be present at trial must fail. While the defendant has a constitutional right not to testify, there is no constitutionally protected right to be absent from trial. *People v. Smith* (1989), 189 Ill. App. 3d 80, 544 N.E.2d 1162; *People v. Wheeler* (1989), 186 Ill. App. 3d 422, 542 N.E.2d 524.

■ Review of the record reveals that defendant willfully decided to leave the courtroom under the mistaken belief that Kirksey would testify for the State. The judge adequately explained defendant's absence to the jury at that time. The jurors were also instructed that they should consider only the testimony of witnesses and exhibits in reaching their verdict. Additionally, closing arguments did not contain any mention that defendant's absence from trial was evidence of guilt. (*People v. Smith* (1989), 189 Ill. App. 3d 80, 544 N.E.2d 1162.) The trial court properly denied defendant's request for an additional instruction.

Defendant also contends that the trial court improperly sentenced him to an extended term on the residential burglary conviction. The primary thrust of this argument is that a trial court may not impose an extended term for residential burglary. Defendant asserts that residential burglary is a crime against property, not against an individual, and that the offense is complete once the accused enters the residence, in this case to take Coleman's VCR. Thus, even when the trial court found that brutal or heinous behavior accompanied the subsequent beating and taking of money from the victim, whom the trial court determined to be physically handicapped (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.2(b)(2), (b)(3), defendant argues that it could have no impact in permitting an extended term for residential burglary.

In *People v. Anderson* (1985), 142 Ill. App. 3d 240, 488 N.E.2d 557, this court rejected the same argument. In that case, defendants broke into the home of a blind, 63-year-old woman. In rejecting the argument that extended-term sentences for residential burglary were

improper because the offense was not "committed against" the victim as required under the statute, the court stated:

> "It is apparent that the legislature, in enacting section 5—5—3.2(b)(3), determined that felonies committed against the elderly, young and handicapped warrant more severe punishment as these individuals are the least able to protect themselves from and are the most traumatized by the commission of felonies. In keeping with this legislative intent, we believe that the legislature intended for this provision to apply to the offense of residential burglary." *People v. Anderson*, 142 Ill. App. 3d at 242, 488 N.E.2d at 558.

We agree fully with the *Anderson* decision. And we observe that in the present case not only was the victim handicapped, but he was traumatized by brutal and heinous conduct on the part of the defendant.

■ When discovered in the apartment, defendant administered a vicious beating to the victim, handicapped by muscular dystrophy. The victim had trouble walking and a speech impediment. Indeed, defendant admitted at trial that he knew the victim was handicapped. Nevertheless, defendant bloodied and knocked the victim to the ground and then kicked him several times, causing a fractured rib. The trial court properly exercised its discretion in imposing an extended term for residential burglary.

Defendant's final contention concerns the length of the imprisonment imposed by the trial court. Defendant argues that even if an extended term for residential burglary is permissible, the maximum term of 30 years is excessive and does not take into consideration his rehabilitative potential.

■ Generally, a trial court is in a better position to determine the punishment to be imposed than is the court of review. As succinctly expressed in *People v. Jackson* (1986), 140 Ill. App. 3d 318, 326, 488 N.E.2d 1056, 1062:

> "A reasoned judgment as to the proper sentence to be imposed depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. The trial court, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors superior to that afforded by the cold record on review."

■ Prior to the imposition of the sentence, the trial judge heard Youngerman's account of defendant's brutal attack upon her in the washroom of her place of employment. In accord with section

5—5—3.2(a)(3) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(a)(3)), the judge could properly weigh this testimony of defendant's prior criminal activity in imposing a more severe sentence upon defendant. Although defendant had no prior convictions, the trial judge found defendant to be an "anti-social criminal without a conscience, a vicious person." The record also indicates that in mitigation the court considered defendant's family background and the fact that the 29-year-old defendant had five children by four different women.

A trial court's sentence may not be altered on appeal absent an abuse of discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) Upon careful review of this record, and mindful of the brutal and vicious conduct of defendant, we find that the trial court acted within its discretion in imposing the 30-year sentence, and we will not disturb that finding on review.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and LaPORTA, JJ., concur.