# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *People v. White*, 2020 IL App (4th) 160793

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD EUGENE WHITE, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-16-0793 |
| Filed | March 6, 2020 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 14-CF-388; the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Katherine M. Donahoe, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>No brief filed for appellee. |
| Panel | PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Knecht and DeArmond concurred in the judgment and opinion. |

**OPINION**

¶ 1    In July 2014, defendant, Ronald White, was convicted of unlawful delivery of heroin within 1000 feet of a church (720 ILCS 570/401(c)(1), 407(b)(1) (West 2012)). The trial court sentenced defendant to seven years in prison.

¶ 2    In July 2016, defendant *pro se* filed a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), alleging that (1) trial counsel was ineffective and (2) the trial court violated defendant's right to be represented by counsel of his choice. In September 2016, the trial court dismissed the petition, concluding that it was frivolous and patently without merit.

¶ 3    Defendant appealed, and the Office of the State Appellate Defender (OSAD) was appointed to represent him on appeal. OSAD moves to withdraw as counsel for defendant, contending that any appeal in this cause would be frivolous.

¶ 4    We agree with OSAD, grant its motion to withdraw, and affirm the trial court's judgment.

## I. BACKGROUND

¶ 6    In April 2014, the State charged defendant with two counts of unlawful delivery of a controlled substance. Specifically, the charge alleged that (1) defendant unlawfully delivered heroin (720 ILCS 570/401(c)(1) (West 2012)) (count II) and (2) he did so within 1000 feet of a church (*id.* § 407(b)(1)) (count I).

### A. The Pretrial Proceedings

¶ 8    In July 2014, on the day the case was set for trial, defendant informed the trial court that he wished to fire his appointed public defender and hire private counsel. The court asked defendant what steps he had taken to retain counsel. Defendant replied that his family was going to try to raise money to hire an attorney but they had not yet contacted any attorneys regarding representing him. The court asked defendant why he waited until the morning of trial to raise the issue, and defendant responded he was not procrastinating. He explained that he was surprised to learn the trial was going to start and was unhappy with his appointed counsel's representation. He said he sent a letter to the public defender's office regarding complaints he had about his counsel's performance.

¶ 9    The trial court asked defendant what his concerns were. Defendant replied that he wanted his counsel to file motions to get the case dismissed. Defendant also wanted his counsel to present an entrapment defense, which counsel told the court he had filed and would present "as best we can." Defendant also complained that his counsel had only visited him twice in jail and once in a conference room at the courthouse to discuss a plea offer from the State.

¶ 10    The trial court ultimately denied defendant's request for time to hire private counsel, and the case proceeded to jury trial.

### B. The Trial

¶ 12    Curtis Kitchen testified as a State witness that he worked for the police as a confidential informant. He testified that defendant agreed to meet him in April 2014 and sell Kitchen heroin. Normal police detective Luke Scaglione drove Kitchen to meet defendant at a McDonald's restaurant. Kitchen went into the bathroom of a gas station attached to the

McDonald's, where he met defendant and another man. Inside the bathroom, defendant gave Kitchen a small bag of heroin in exchange for $660 in marked bills. Kitchen returned to Scaglione and handed him the bag of heroin.

¶ 13 Scaglione testified that a police team surveilled from the parking lot during the transaction. After defendant left the bathroom, defendant and the other man were observed going into the McDonald's before getting back into defendant's vehicle and driving away. A short time later, the police pulled over defendant's vehicle. A man named Cedric Gary was in the vehicle with defendant at the time of the stop. Scaglione testified that police recovered $60 in marked bills from defendant and $400 in marked bills from Gary. Scaglione also recovered $100 in marked bills from the McDonald's cash register.

¶ 14 Scaglione further testified that he measured the distance between the McDonald's and Our Savior Lutheran Church, which was across the street, by using a calibrated device. The measured distance was 578 feet and 2 inches. Scaglione was familiar with the church and knew it was operating as a church on the date of the drug transaction.

¶ 15 Defendant testified that Kitchen was a friend of his, and they had used drugs together in the past. He claimed Kitchen contacted him and asked him to bring Kitchen heroin because Kitchen was "sick" from lack of drug use. Defendant testified that he and Gary went to meet Kitchen so Gary could sell Kitchen heroin. Defendant and Gary arrived at the gas station and went to the bathroom. Defendant saw Kitchen walk over to Gary at the urinal, where Gary took the money from Kitchen and gave him heroin. Gary then walked out of the bathroom. Defendant and Kitchen used about a half gram of the heroin together and then left the bathroom separately. Defendant denied selling the heroin.

¶ 16 At the close of evidence, the trial court denied defendant's request to instruct the jury on the entrapment defense. The court granted the State's request to instruct the jury on accountability. The jury found defendant guilty, and the court later sentenced him to seven years in prison.

¶ 17 Defendant directly appealed his conviction, and this court affirmed. *People v. White*, 2017 IL App (4th) 140818-U.

¶ 18                                    C. The Postconviction Petition

¶ 19 In July 2016, defendant *pro se* filed a postconviction petition, alleging that (1) trial counsel was ineffective and (2) the trial court violated defendant's right to be represented by counsel of his choice. In September 2016, the trial court dismissed the petition, concluding that it was frivolous and patently without merit.

¶ 20 Defendant appealed, and OSAD was appointed to represent him on appeal. In August 2019, OSAD moved to withdraw as counsel, contending that any appeal in this case would be frivolous. OSAD sent a copy of its motion to withdraw to defendant and informed him that he could respond to that motion. The same day OSAD filed its motion to withdraw, the clerk of this court sent notice to defendant that he would need to respond to OSAD's motion before September 16, 2019. Defendant did not respond.

¶ 21                                         II. ANALYSIS

¶ 22 Defendant appeals, claiming his postconviction petition was erroneously dismissed. In OSAD's motion to withdraw as counsel, OSAD writes that it considered whether (1) it is

arguable that any procedural error at trial warrants reversal, (2) the postconviction petition states an arguable claim of ineffective assistance of counsel, and (3) the postconviction petition states an arguable claim that the trial court denied defendant his right to counsel of his choice at trial. Because OSAD ultimately concluded that any argument would be frivolous, OSAD moved to withdraw.

¶ 23 We agree with OSAD, grant its motion to withdraw, and affirm the judgment of the trial court.

¶ 24 A. The Post-Conviction Hearing Act

¶ 25 The Act provides a criminal defendant the means, in addition to a direct appeal, to raise a claim of substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 23, 38 N.E.3d 1256; 725 ILCS 5/122-1 (West 2014). The Act contains a three-stage procedure for relief. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615; 725 ILCS 5/122-2.1 (West 2014). At the first stage, the trial court shall, within the first 90 days after the petition is filed and docketed, dismiss a petition summarily if the court determines it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014).

¶ 26 A petition may be dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Allen*, 2015 IL 113135, ¶ 25. Stated another way, "[a] post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' " *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001) (quoting *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996)). An appellate court reviews the first-stage dismissal of a postconviction petition *de novo*. *People v. Couch*, 2012 IL App (4th) 100234, ¶ 13, 970 N.E.2d 1270.

¶ 27 B. This Case
¶ 28 1. No Arguable Procedural Error
¶ 29 First, OSAD analyzes whether there was any procedural error that could warrant reversal and concluded no such error exists. We agree.

¶ 30 As OSAD correctly notes, in the first stage of the three-stage process for post-conviction petitions, the trial court has 90 days during which it may dismiss the petition if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). If the court does not dismiss the petition within 90 days, it must advance the petition to the second stage and appoint counsel to represent the defendant. *Id.* §§ 122-2.1(b), 122-4.

¶ 31 In this case, the petition was filed July 14, 2016, and the trial court summarily dismissed the petition on September 26, 2016. Because this dismissal occurred within the 90-day period provided by statute, no procedural error was committed as a result of the court's dismissing the petition.

¶ 32 2. No Valid Ineffective Assistance of Counsel Claims
¶ 33 Defendant complained in his postconviction petition that the outcome of his trial would have been different if not for "absurd representation of counsel as well as pre-trial investigation he [failed] to properly conduct to ensure that the allege [*sic*] offense of delivery

of a controlled within the thousand feet of a church was correctly applied." Defendant then clarified that he believed the problem to be that "the ineffective counsel never requested the state to produce facts or evidence of whether, or not was church in service, or whether any other events in operation." Therefore, defendant contended, the evidence was insufficient to sustain the charge of which he was found guilty.

¶ 34 Defendant's assertion is not really a claim of ineffective assistance of counsel; instead, defendant is claiming that the evidence against him was not sufficient to warrant his conviction. However, defendant has already argued in his direct appeal that the evidence presented at trial was not sufficient, and this court has already rejected that claim. *White*, 2017 IL App (4th) 140818-U, ¶¶ 46-53. The doctrine of *res judicata* bars consideration of issues raised in a postconviction petition that were previously raised and decided on direct appeal. *People v. Blair*, 215 Ill. 2d 427, 443-45, 831 N.E.2d 604, 614-16 (2005).

¶ 35                              3. No Denial of Choice of Counsel at Trial

¶ 36 Defendant also claimed in his postconviction petition that he was deprived of his constitutional rights when the trial court denied his request to hire counsel of his own choosing.

¶ 37 Although a defendant in a criminal case has a constitutional right to be represented by counsel of his choice, a trial court has the discretion to determine whether a defendant's right to select counsel unreasonably interferes with the orderly administration of justice. *People v. Young*, 207 Ill. App. 3d 130, 133-34, 565 N.E.2d 309, 311 (1990). In exercising its discretion, the court should consider "the diligence of the movant, the right of the defendant to a speedy, fair and impartial trial, and the interests of justice." *People v. Segoviano*, 189 Ill. 2d 228, 245, 725 N.E.2d 1275, 1283 (2000). A court does not abuse its discretion by denying a motion to continue to obtain alternative counsel " 'where new counsel is unidentified.' " *People v. Staple*, 402 Ill. App. 3d 1098, 1103, 932 N.E.2d 1064, 1069 (2010). "Especially when a defendant cannot 'articulate an acceptable reason for desiring new counsel and is already being represented by an experienced, court-appointed criminal lawyer, it is not an abuse of discretion to deny defendant's trial-day request for a continuance.' " *Id.* (quoting *People v. Jackson*, 216 Ill. App. 3d 1, 7, 574 N.E.2d 719, 723 (1991)).

¶ 38 In this case, defendant had made no real effort to hire counsel. He claimed he wanted new counsel, but he had neither raised the money to hire counsel, nor had he contacted a single attorney. He also waited until the day of trial to request more time, and this was the second time the case had been set for trial.

¶ 39 Defendant also failed to provide an acceptable reason for desiring new counsel. When he requested a continuance to hire new counsel, he claimed that (1) his appointed counsel had not worked on the case in the way he would like, (2) counsel would not file a motion to dismiss, and (3) counsel would not present the entrapment defense that defendant would like. The trial court concluded that counsel had spent sufficient time consulting with defendant and considering the entrapment defense. We further note that counsel did ultimately present the entrapment defense and request the appropriate jury instruction, although the court denied it.

¶ 40 Defendant failed to state any facts in his petition—and we find none in this record—to support his contention that the trial court's denying the motion to continue was an abuse of discretion. We conclude that the trial court was well within its discretion to deny defendant's motion to continue.

In this case, OSAD filed a "Motion For Leave to Withdraw As Counsel On Appeal Consistent With *Pennsylvania v. Finley* And Pursuant to Illinois Law" and further stated in its opening paragraph, "Consistent with *Pennsylvania v. Finley*, 481 U.S. 551 (1987), \*\*\* the Office of the State Appellate Defender moves for leave to withdraw as counsel on appeal in this case because the appeal presents no potentially meritorious issues for review." However, OSAD's reference to *Finley* is not correct because *Finley* does not address the actions counsel must take when moving to withdraw as counsel in a postconviction appeal.

### 1. *Anders v. California* and *Pennsylvania v. Finley*

In *Anders v. California*, 386 U.S. 738, 744-45 (1967), the United States Supreme Court discussed the process by which an attorney withdraws from a *direct appeal*—by which we mean a defendant's appeal from his conviction or sentence or both. However, as the Supreme Court later made clear in *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), *Anders* does not apply to appeals brought by criminal defendants in collateral proceedings, such as appeals from dismissals of postconviction petitions, which is the case now before us. The Supreme Court in *Finley* wrote the following:

> "We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions [citation], and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further." *Id.*

Because *Finley* involved a defendant's appeal from the dismissal of his postconviction petition, the Supreme Court discussed such collateral attacks and wrote the following:

> "States have no obligation to provide this avenue of relief [citation], and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.
>
> \*\*\* Since respondent has no underlying constitutional right to appointed counsel in state postconviction proceedings, she has no constitutional right to insist on the *Anders* procedures which were designed solely to protect that underlying constitutional right." *Id.* at 557.

The Supreme Court in *Finley* further explained as follows:

> "At bottom, the decision below rests on a premise that we are unwilling to accept—that when a State chooses to offer help to those seeking relief from convictions, the Federal Constitution dictates the exact form such assistance must assume. On the contrary, in this area States have substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review. In Pennsylvania, the State has made a valid choice to give prisoners the assistance of counsel without requiring the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position—at trial and on first appeal as of right. In this context, the Constitution does not put the State to the difficult choice between affording no counsel whatsoever or following the strict procedural guidelines annunciated in *Anders*." *Id.* at 559.

*Finley* does not add to or alter the Supreme Court's holding in *Anders*. In *Finley*, the Pennsylvania Superior Court held that because postconviction counsel failed to follow *Anders*

procedures when withdrawing, the case must be remanded back to the trial court. *Commonwealth v. Finley*, 479 A.2d 568, 571 (Pa. Super. Ct. 1984). The Supreme Court reversed, noting that *Anders* "established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel." *Finley*, 481 U.S. at 555. The Supreme Court noted there is no constitutional right to counsel in postconviction proceedings. *Id.*

¶ 48    The Supreme Court specifically rejected the "argument that the *Anders* procedures should be applied to a state-created right to counsel on postconviction review." *Id.* at 556. Instead, "[s]tates have substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review," and these programs need not be designed to conform to the protections laid out for people seeking their first appeal as of right. *Id.* at 559.

¶ 49    Accordingly, it makes no sense for OSAD to purportedly be filing a brief "consistent" with *Finley* when (1) there is no requirement in *Finley* regarding the content of the motion to withdraw postconviction counsel must file when seeking to withdraw and (2) *Finley* in fact specifically holds that *Anders* procedures do not apply in a postconviction context.

¶ 50    The Illinois Supreme Court has provided directions for counsel for postconviction petitioners regarding the steps counsel should take during that representation. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). That court has also explained that the Act provides such petitioners with a "reasonable level of [attorney] assistance." *People v. Suarez*, 224 Ill. 2d 37, 42, 862 N.E.2d 977, 979 (2007).

¶ 51                                        2. Other States and *Finley*

¶ 52    Other jurisdictions do not appear to cite *Finley* in the same way as do appellate attorneys in Illinois. A review of case law has not disclosed any jurisdiction other than Illinois in which a brief filed by appointed appellate counsel in postconviction cases in support of a request to withdraw pursuant to *Anders* is referred to alternatively as either a "*Finley* brief" or a brief "pursuant to" or "in accordance with" *Pennsylvania v. Finley*.

¶ 53    For instance, the Connecticut Superior Court has also questioned appointed counsel's reference to *Finley* in *Maia v. Liburdi*, No. 29 90 13, 1990 WL 283993, at *1 (Conn. Super. Ct. June 29, 1990) (unreported decision by Connecticut Superior Court, stating: "After this appointment, [the assistant public defender] filed a motion to withdraw her appearance citing 'the doctrine of *Pennsylvania v. Finley* [citation].' Neither the motion to withdraw nor the memorandum initially filed in support of the motion sets forth what counsel believes 'the doctrine of *Pennsylvania v. Finley*' to be ***.").

¶ 54    Some courts also cite *Finley* for the proposition that counsel appointed under state law, in proceedings in which indigent defendants have no right to counsel under the United States Constitution, have no obligation to follow *Anders* procedures to withdraw. See, *e.g.*, *Barbour v. Haley*, 410 F. Supp. 2d 1120, 1127 (M.D. Ala. 2006) ("In [*Finley*], the Court concluded that its analysis in *Ross v. Moffitt* foreclosed the claim that a postconviction petitioner is entitled to the procedures set forth in [*Anders*]."); *In re Sade C.*, 920 P.2d 716, 726-27 (Cal. 1996) ("[I]n [*Finley*], the court declined to extend *Anders* beyond appointed appellate counsel's representation of an indigent criminal defendant in his first appeal as of right." "The *Finley* court concluded that a state's failure to follow the *Anders* procedures in collateral postconviction proceedings for an indigent criminal defendant does not offend the due process

or equal protection clause.").

¶ 55                           3. The Solution

¶ 56    Again, we emphasize that *Finley* does not say that attorneys are to file an *Anders* brief in moving to withdraw in postconviction cases; instead, *Finley* says the opposite. It explicitly holds that *Anders* has no bearing on that withdrawal. *Finley*, 481 U.S. at 556 ("[W]e reject respondent's argument that the *Anders* procedures should be applied to a state-created right to counsel on postconviction review just because they are applied to the right to counsel on first appeal that this Court established in *Douglas*.").

¶ 57    Essentially, OSAD's references to *Finley* in its motions to withdraw as counsel from dismissals of first-stage postconviction petitions are all made up and should stop.

¶ 58                           III. CONCLUSION

¶ 59    For the reasons stated, we grant counsel's motion and affirm the trial court's judgment.

¶ 60    Affirmed.