Filed 7/9/10

NO. 4-09-0312

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, )   Appeal from
        Plaintiff-Appellee,        )   Circuit Court of
        v.                           )   Champaign County
DEBRA M. STAPLE,                )   No. 08CF818
        Defendant-Appellant.     )
                             )   Honorable
                             )   Thomas J. Difanis,
                             )   Judge Presiding.

_____

JUSTICE KNECHT delivered the opinion of the court:

In January 2009, a jury convicted defendant, Debra M. Staple, of (1) aggravated battery (720 ILCS 5/12-4(b)(18) (West Supp. 2007)) for striking a peace officer with her car door and (2) obstructing justice (720 ILCS 5/31-4(a) (West 2008)) for providing a false name in order to avoid arrest. In February 2009, the trial court denied defendant's motion for acquittal or, in the alternative, a new trial and sentenced defendant to 10 years' imprisonment for aggravated battery and 3 years' imprisonment for obstructing justice, to run concurrently. In April 2009, the court denied defendant's motion to reduce sentence. Defendant appeals, arguing the court erred by (1) denying defendant's motion to continue to retain private counsel and (2) failing to comply with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May

1, 2007).  We affirm.


                    I. BACKGROUND

        On April 29, 2008, at approximately 2 a.m., police
approached defendant and her husband in their parked car as
possible witnesses to a reported nearby shooting.  Defendant
denied hearing a gunshot; provided a false name for herself,
apparently to avoid arrest on two outstanding warrants; refused
to exit the car after police ascertained her true identity;
attempted to close the car door, which the officers had ordered
opened to try to remove her, thereby striking an officer standing
within its sweep; and was then restrained and taken into custody
by police with the use of pepper spray.

        On April 30, 2008, the State charged defendant with (1)
aggravated battery (720 ILCS 5/12-4(b)(18) (West Supp. 2007)) for
knowingly making contact of an insulting or provoking nature with
a known peace officer engaged in the execution of official duties
and (2) obstructing justice (720 ILCS 5/31-4(a) (West 2008)) for
providing the police a false name in order to prevent her own
arrest.  On May 5, at defendant's arraignment, the court ap-
pointed an attorney for defendant.  On June 3, defendant failed
to appear for a hearing.

        The trial court set trial for January 5, 2009.  On that
date, defendant moved for a continuance to retain private coun-

sel. The motion stated, "[Defendant] has talked with one attorney, but he has not yet entered his appearance." When she presented the motion to the court, defense counsel said, "At this point this morning [defendant], after the pre[]trial, informed me that she wants to hire private counsel. She said that she had spoken with someone but was not able to get that attorney in court this afternoon." In response to the court's inquiry into the identity of the attorney, counsel said, "Your Honor, she would not tell me. She said she didn't feel like she could use that person's name unless she'd actually hired that attorney." The court noted "in [Champaign County case No.] 07[-]CF[-]349 [defendant] was in court in March of '07, some close to two years ago. In [Champaign County case No.] 08[-]CF[-]818 [(this case)] she was in court May of '08." The court concluded defendant was "using this [request for private counsel] merely as a ploy to get a continuance" and denied the motion.

After a recess, defense counsel renewed the motion to continue, provided the name of the attorney defendant allegedly consulted, and stated defendant "was expecting that he would be able to be here to enter his appearance tomorrow morning at 9." The trial court again expressed its doubts as to defendant's motives and diligence, noted the case was set for trial that day, and expressed further doubts as to the availability of the named attorney. The court denied the motion. Moments later, during

discussion of the parties' witness lists, the court added:

> "That's another reason why the [c]ourt's
> going to deny the [m]otion to [c]ontinue.
> The defense has writted [a witness] back from
> the Department of Corrections.  He is here
> presently in our custody for trial today.
> Again, all this [d]efendant is doing is try-
> ing to delay a trial in this matter."

The court did not address the motion further at trial.

For <u>voir</u> <u>dire</u>, the trial court addressed the entire venire, stating as follows:

> "I want to go over some of the instructions
> with you now so that you can keep them in
> perspective as you listen to the testimony.
> I will continue to repeat these instructions
> throughout the course of the afternoon as we
> go through our jury selection.
>
> The first instruction is that [defen-
> dant] is presumed to be innocent of the
> charges against her.  This presumption re-
> mains with her throughout every stage of the
> trial and during your deliberations on the
> verdict and is not overcome unless, from all
> of the evidence in this case, you are con-

- 4 -

vinced beyond a reasonable doubt that she is guilty.

The State has the burden of proving the guilt of [defendant] beyond a reasonable doubt, and this burden remains on the State throughout the case. [Defendant] is not required to prove her innocence.

In connection with that last sentence, this [d]efendant, as does every citizen, possesses an absolute right not to testify at her trial if she so chooses. If [defendant] chooses not to testify, you'll receive an instruction that states the fact that [defendant] did not testify must not be considered by you in any way in arriving at your verdict."

After further individual questioning of the venirepersons by the court, the State, and the defense about their families, whether they knew any of the parties involved in the case, and whether they could be fair and impartial, and after the parties exercised peremptory challenges, the court addressed the first venire panel, consisting of four potential jurors accepted by the parties, stating as follows:

"THE COURT: *** For the four of you, I

want to go over again the instructions that we started with this afternoon.

The four of you understand that [defendant] is presumed to be innocent of the charges against her; that before [defendant] can be convicted the State must prove her guilty beyond a reasonable doubt; that [defendant] is not required to offer any evidence on her own behalf[;] and that if [defendant] chooses not to testify, her failure to testify cannot be held against her in any way.

The four of you understand those instructions; is that correct?

[THE JURORS:] (In unison) Correct.

THE COURT: And they answer in the affirmative.

And the four of you will follow those instructions; is that correct?

[THE JURORS:] (In unison) Yes.

THE COURT: Again, they answer in the affirmative."

The court swore in all four members of the first panel as jurors. The court and the parties proceeded to question individual

members of a second venire panel, consisting of four potential jurors, a third panel, consisting of four potential jurors, and a fourth panel, consisting of two potential alternate jurors. Following individual questioning and further peremptory challenges, the parties accepted the members of each panel. The court repeated the above instructions and asked the members of each panel collectively if they understood and accepted the instructions. Each panel affirmed the instructions in unison. The court swore in the members of the panels as jurors and alternate jurors. After evidence and arguments, the court again instructed the jury regarding the presumption of innocence, the burden of proof, and defendant's rights not to present evidence and not to testify. See Illinois Pattern Jury Instructions, Criminal, No. 2.03 (4th ed. 2000).

On January 7, 2009, the jury returned guilty verdicts on both charges. On February 20, defendant orally amended her motion for acquittal or, in the alternative, a new trial to allege the trial court erred in denying defendant's motion to continue to retain private counsel. Defendant's motion did not allege deficiencies in voir dire. The court again emphasized "the matter was set for trial and had been on the call for a considerable period of time." The court denied the motion as amended and sentenced defendant to concurrent terms of 10 years' imprisonment for aggravated battery and 3 years' imprisonment for

- 7 -

obstructing justice.  At that point, the State said, "Your Honor, Ms. Staple also has [No.] 07[-]CF[-]349 pending.  I would move to dismiss that at this time."  The court granted the State's motion to dismiss.  On April 27, the court denied defendant's motion to reduce sentence, which failed to include either the court's ruling on the motion to continue or its voir dire directions. This appeal followed.

## II. ANALYSIS

### A. Motion To Continue To Retain Private Counsel

Defendant argues the trial court erred when it denied defendant's motion to continue to retain private counsel and asks this court to reverse and remand for a new trial.  Specifically, defendant argues the court abused its discretion by failing to inquire into defendant's possible motives for requesting new counsel on the day of trial and concluding "ipse dixit" her purpose was to delay trial.  The State responds the court acted within its discretion because (1) defendant did not allege she had in fact obtained substitute counsel who was ready, willing, and able to proceed with the case and (2) the charges against defendant had been pending sufficiently long for the court to infer defendant was using her motion to continue to stall trial. We agree with the State.

"The determination whether to grant a continuance for substitution of counsel is a matter left to the discretion of the

- 8 -

trial court, and will not be overturned absent an abuse of that discretion." People v. Segoviano, 189 Ill. 2d 228, 245, 725 N.E.2d 1275, 1283 (2000). "[A] court abuses its discretion when its decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." People v. Ortega, 209 Ill. 2d 354, 359, 808 N.E.2d 496, 500-01 (2004). Factors to consider "in evaluating a trial court's exercise of its discretion include the diligence of the movant, the right of the defendant to a speedy, fair[,] and impartial trial, and the interests of justice." Segoviano, 189 Ill. 2d at 245, 725 N.E.2d at 1283.

A criminal defendant's right to counsel of choice is constitutionally protected. Powell v. Alabama, 287 U.S. 45, 53, 77 L. Ed. 158, 162, 53 S. Ct. 55, 58 (1932); People v. Green, 42 Ill. 2d 555, 557, 248 N.E.2d 116, 117 (1969); see also People v. Jones, 269 Ill. App. 3d 925, 932, 647 N.E.2d 612, 617 (1995), overruled on other grounds by People v. Smith, 188 Ill. 2d 335, 721 N.E.2d 553 (1999). A trial court considering a motion to continue to retain private counsel must balance defendant's constitutional right against the interests in trying the case efficiently. People v. Jackson, 216 Ill. App. 3d 1, 6, 574 N.E.2d 719, 723 (1991); see People v. Friedman, 79 Ill. 2d 341, 349, 403 N.E.2d 229, 234 (1980). Thus, "[a] defendant cannot assert that right in order to, even temporarily, thwart the

- 9 -

administration of justice or to otherwise impede the effective prosecution of a crime." Jones, 269 Ill. App. 3d at 932, 647 N.E.2d at 617. To avoid trial delay, this court has ruled "[a trial] court does not abuse its discretion in denying a defendant a continuance to obtain substitute counsel where new counsel is unidentified or does not stand ready, willing, and able to make an unconditional entry of appearance on defendant's behalf." Jones, 269 Ill. App. 3d at 932, 647 N.E.2d at 617. Especially when a defendant cannot "articulate an acceptable reason for desiring new counsel and is already being represented by an experienced, court-appointed criminal lawyer, it is not an abuse of discretion to deny defendant's trial-day request for a continuance." Jackson, 216 Ill. App. 3d at 7, 574 N.E.2d at 723.

Factors indicating a defendant's diligence include the defendant's opportunity to retain counsel and the steps the defendant has taken toward retaining counsel. In Friedman, 79 Ill. 2d at 348, 403 N.E.2d at 233, for example, the supreme court held the trial court did not err in denying a motion to continue when defendant had more than 2 1/2 months to find substitute counsel but first made contact with a potential substitute only three days before trial and moved to continue on the day of trial because counsel was unavailable. In People v. Free, 112 Ill. App. 3d 449, 454, 445 N.E.2d 529, 532 (1983), this court affirmed the trial court's denial of a motion to continue when the defend-

ant "had ample time [from December 3, 1981, when counsel was appointed, until March 2, 1982, when trial was set to begin,] to attempt to obtain counsel of his own choosing if he so wished and was able to do so."  In People v. Terry, 177 Ill. App. 3d 185, 190-91, 532 N.E.2d 568, 572 (1988), this court affirmed the trial court's denial of a motion to continue when the "[d]efendant was represented by counsel for almost four months and at no time prior to the day of trial complained about his representation, or indicated a desire to obtain other counsel."  A court may infer from these two factors whether a defendant's motion is "really for purposes of delay."  Terry, 177 Ill. App. 3d at 190, 532 N.E.2d at 572.

The trial court did not abuse its discretion in this case.  Defendant admitted she had not hired substitute counsel, and did not allege counsel was ready, willing, and able to represent her.  Moreover, the court considered the time defendant had to find counsel and defense counsel's statement defendant had only decided to substitute counsel on the morning of trial.  Defendant's initial refusal to provide the name of an attorney with whom she had allegedly spoken about representing her was also before the court.  The court also found a continuance would be prejudicial with respect to a defense witness who had been transported from the Department of Corrections to testify.  The court was allowed to infer from these facts defendant was using

her motion to continue "to *** thwart the administration of justice or to otherwise impede the effective prosecution of a crime."

In addition to these considerations by the trial court, we note defendant was already represented by an able, court-appointed criminal lawyer. Moreover, defendant did not allege in her written motion, or in argument before the court, any specific deficiencies in the public defender's representation that hiring private counsel would address. Under these circumstances, the court "could reasonably conclude that the request was made solely for the purpose of delay." Friedman, 79 Ill. 2d at 349, 403 N.E.2d at 234.

Finally, we note "[t]he purpose of a review is to evaluate the record of the trial court proceeding, and, in general, the review will be limited to what appears in the record." People ex rel. Walker v. Pate, 53 Ill. 2d 485, 503-04, 292 N.E.2d 387, 398 (1973). The trial court alluded twice to defendant's pending case No. 07-CF-349 in ruling on defendant's motion. There was no objection by either party. Neither party moved to amend the record on appeal with information regarding that charge, and neither party addresses this issue in its brief. It appears the trial court may have considered defendant's behavior in litigating her other case together with her behavior in and the circumstances of the case immediately before the

- 12 -

court.  Defendant did not object, and both case numbers appear in the caption for defendant's motion to continue.  We would prefer the record be complete, but the facts of record support the trial court's exercise of discretion.  We find the court did not abuse its discretion in denying defendant's motion for a continuance to seek private counsel.

## B. Voir Dire

Defendant also contends the trial court erred by failing to comply with the mandates of Supreme Court Rule 431(b). Defendant argues the rule, as she maintains it ought to be construed, would require the court to do more to ascertain the jurors' understanding and willingness to abide by the principles the rule addresses.  Specifically, defendant argues the court improperly delayed questioning potential jurors as required by Rule 431(b) until after the parties had accepted them; because she argues noncompliance with Rule 431(b) per se denies a defendant a fair trial, she argues the error requires us to reverse and remand for a new trial.  The State argues (1) the court satisfied the requirements of Rule 431(b) and (2) assuming otherwise, the error is harmless.  We agree with the State the court did not err in its application of Rule 431(b).

Defendant concedes she failed to preserve the alleged defect in the trial court's administration of Rule 431(b) for review.  Under the plain-error doctrine, however, a reviewing

court may consider an unpreserved and otherwise forfeited error "(1) where the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence[] or (2) where the error is so serious that the defendant was denied a substantial right[] and thus a fair trial." People v. McLaurin, 235 Ill. 2d 478, 489, 922 N.E.2d 344, 351 (2009). "[B]efore we consider application of the plain-error doctrine to the case at bar, we must determine whether the trial court erred in its application of Rule 431(b)." People v. Willhite, No. 4-09-0158, slip op. at 7 (May 13, 2010), ___ Ill. App. 3d ___, ___ N.E.2d ___. We review the court's compliance with a supreme court rule de novo. People v. Suarez, 224 Ill. 2d 37, 41-42, 862 N.E.2d 977, 979 (2007).

Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) was principally adopted to ensure trial-court compliance with the Supreme Court of Illinois's decision in People v. Zehr, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984). 177 Ill. 2d R. 431(b), Committee Comments, at lxxix. In Zehr, the supreme court held a trial court erred during voir dire by refusing to ensure jurors understood the following four principles: (1) the State bears the burden of proof, (2) the defendant need not present evidence on his own behalf, (3) the State must prove the defendant's guilt beyond a reasonable doubt, and (4) the defendant's decision not to testify

- 14 -

must not be held against him.  Zehr, 103 Ill. 2d at 477-78, 469 N.E.2d at 1064.

Prior to its 2007 amendment, Rule 431(b) required defendants to request the trial court to question jurors regarding their understanding of the Zehr principles.  See 177 Ill. 2d R. 431(b).  In 2007, the supreme court amended Rule 431(b), "plac[ing] an affirmative sua sponte duty on the trial courts to ask potential jurors in each and every case whether they understand and accept the Zehr principles."  People v. Graham, 393 Ill. App. 3d 268, 273, 913 N.E.2d 99, 103 (2009); see also Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.  Following amendment, Rule 431(b) now states as follows:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify

cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section."  Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Whether the trial judge's admonishments to the jury constitute error under Rule 431(b) is controlled by our recent precedent in Willhite, No. 4-09-0158, ___ Ill. App. 3d ___, ___ N.E.2d ___.  In that case, a jury convicted the defendant at a trial presided over by the same judge as the case at bar.  The trial court addressed the potential jurors in substantially the same manner as here: it noted the Zehr principles before the venire en masse, recited the principles to panels of four potential jurors before they were sworn in, and asked the potential jurors whether they understood and assented to the principles. In reaching our decision, we relied on language in the rule requiring the trial court (1) to "ask each potential juror, individually or in a group" (emphasis added) whether he understands and accepts the principles (2) in a manner that provides

- 16 -

"each juror an opportunity to respond to specific questions concerning the principles." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. We held Rule 431(b) allows trial courts to ask potential jurors in panels whether they understand and will follow the principles in compound form and allows panels of potential jurors to answer in unison. Further, we held Rule 431(b) questioning could occur after potential jurors had been accepted and before they were sworn in because, presumably, the court would dismiss any juror who did not understand or would not affirm the principles. The court's method of inquiry was sufficiently specific to afford jurors an opportunity to respond, and the court itself did nothing to discourage jurors from objecting to or asking about the principles. Because the case at bar presents us with substantially the same facts, we decline to find error here.

We expand on our decision in Willhite, however, to address and reject defendant's argument the trial court's procedure contravened the rule's purpose as suggested by committee comments. The committee comments to Rule 431(b) as it was originally adopted state the rule "seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments, at lxxix. Defendant argues the trial court's compound inquiry as to

- 17 -

whether each panel of prospective jurors understood and would follow all four _Zehr_ principles is "precisely what the rule was designed to prevent."

The present case is immediately distinguishable from one in which "the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law."  In _People v. Emerson_, 122 Ill. 2d 411, 522 N.E.2d 1109 (1987), for example, the supreme court affirmed a death sentence after rejecting the defendant's challenge to the trial court's _voir_ _dire_.  _Emerson_ was decided after and in light of _Zehr_ but before adoption of Rule 431(b).  In that case, the court admonished the venire _en_ _masse_ as follows:

> "'As I tell all jurors, I am the boss of
> the law.  So, considering that, is there any
> juror, including the jurors that are out
> there that will not follow the law as I give
> it to them?  Anybody?  When I tell you the
> law is a particular way, that's the law you
> must follow.
>
> Will everybody do it?  Are you abso-
> lutely sure?  You might--everybody said yes.
> I want you to remember that.'"  _Emerson_, 122
> Ill. 2d at 426, 522 N.E.2d at 1114.

Later, the court said, again to the entire venire:

- 18 -

"'There's one thing I forgot to mention to you before and that is that as the [d]efendant sits in court at the present time, he is presumed innocent.  This in a sense will remain with him throughout the case until or if the State proves him guilty beyond a reasonable doubt.  So, if I were to take the first twelve whose names I first called out, told you to go back to the jury room, give me a verdict at this time, I'm sure all twelve of you would look at me and say what's that man talking about.  How could we possibly go ahead and give a verdict at this time since we haven't heard anything.  It would be absolutely wrong because if I asked you to give me a verdict at this time, your verdict would have to be not guilty since you have not heard anything.

Until the State proves him guilty beyond a reasonable doubt, he is not guilty, do you understand?  It goes to the fundamental aspect of our law in the United States.'" Emerson, 122 Ill. 2d at 426, 522 N.E.2d at 1114.

- 19 -

The supreme court held the trial court had "sufficiently complied with Zehr" by asking whether the potential jurors would be able to follow the law as the judge told it to them and later instructing the potential jurors with respect to the burden of proof, the presumption of innocence and, by implication only, the defendant's right not to present evidence. Emerson, 122 Ill. 2d at 427, 522 N.E.2d at 1114-15.

The trial court's procedure in Emerson would likely not now withstand scrutiny under amended Rule 431(b) (which the supreme court had not yet adopted), because the trial court did not pose sufficiently specific questions to potential jurors in sufficiently small groups to afford each juror "an opportunity to respond." In fact, the court asked the venire whether each member would follow the law as the court expounded it and only afterward instructed the jurors as to the Zehr principles. Thus, the questioning did not address the jurors' attitudes toward the Zehr principles specifically.

In contrast, the trial court in the present case instructed the jury clearly and specifically with respect to the Zehr principles. It then repeated the principles and asked small groups of prospective jurors whether they understood the principles and then whether they would abide by the principles. We conclude the court complied with Rule 431(b), and the court's admonishments in this case were not the practice the supreme

court sought to prohibit.  We reject defendant's argument to the contrary.

We find the trial court committed no error in reciting the four <u>Zehr</u> principles to the venire and inquiring about the jurors' understanding and acceptance of those principles in small groups.  Thus, we need not consider defendant's contention under plain-error analysis.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.  As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

MYERSCOUGH, P.J., and POPE, J., concur.