**NOTICE**
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180322-U

NO. 4-18-0322

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 13, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| CLOANGER T. ROBINSON, | ) | No. 17CF256 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant was denied his right to a fair sentencing hearing.

¶ 2             In April 2017, the State charged defendant, Cloanger T. Robinson, by information with one count of possession of a controlled substance with the intent to deliver (720 ILCS 570/401(c)(2) (West 2016)) and one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2016)).  After a January 2018 trial, the jury found defendant guilty of both charges.  Defendant filed a motion for a new trial, which was denied.  At a February 2018 hearing, the Vermilion County circuit court sentenced defendant to 20 years' imprisonment for possession of a controlled substance with the intent to deliver.  Defendant filed a motion to reconsider his sentence, which the court denied in May 2018.

¶ 3             Defendant appeals, contending the circuit court (1) erred in admonishing potential jurors under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (2) erred in allowing the

State to admit the larger amount of cocaine into evidence, and (3) denied defendant his right to a fair sentencing hearing. We affirm in part, reverse in part, and remand the cause for a new sentencing hearing.

¶ 4                                    I. BACKGROUND

¶ 5        The State's two charges relate to defendant's actions on April 6, 2017. Count I asserted defendant knowingly possessed with the intent to deliver more than 1 gram but not more than 15 grams of a substance containing cocaine. Count II alleged defendant knowingly possessed a substance containing cocaine.

¶ 6        On January 9, 2018, the circuit court commenced defendant's jury trial. The court conducted *voir dire* by separating potential jurors into groups of 14 and then addressing each group of 14 separately. After the jury was selected, the court brought in another six potential jurors for the purpose of selecting an alternate. With the first group of 14, the court read the first two principles set forth in Rule 431(b) and then asked if anyone in the front row of the jury box did not understand and accept the first two principles. The court noted no one raised a hand. The court then asked the second row the same questions and again noted no one raised a hand. The court repeated the process reading the third and fourth principles together, and no one raised a hand. The court then addressed the second group of 14 potential jurors in the same manner, and no one raised a hand. The court used the same questioning procedure for the potential alternate juror, and no one raised a hand.

¶ 7        The State presented the testimony of the following: (1) Jamie Kyler, a Danville police officer; (2) Christina Davis, an eyewitness; (3) Travis Spain, a Danville police officer; (4) Kedrick Houser, a narcotics agent with the Vermilion County Metropolitan Enforcement Group (VMEG); (5) Julie Edwards, a drug chemist with the Illinois State Police; and

(6) Katharine Mayland, a forensic scientist with the latent fingerprint section at the Illinois State Police forensic science laboratory. The State also presented numerous exhibits, including photographs of defendant's residence and the contraband and other-related items seized from the residence. Defendant recalled Officers Spain and Kyler and presented the testimony of his mother, Diane Carrington. The evidence relevant to the issues on appeal follows.

¶ 8            Officer Kyler testified he was in charge of the execution of the search warrant for defendant's residence at 107 Cronkhite Avenue. Officer Kyler remained outside during the initial entry into defendant's home. The police detained two individuals, Richard Deline and Davis, in the driveway immediately outside the home. Officer Kyler observed Deline attempt to hide something under the vehicle that was parked in the driveway. Officer Kyler recovered suspected cocaine within inches of Deline. Officer Kyler testified the substance was several small rocks that weighed 0.2 grams. Based on his experience, Officer Kyler believed the street value of the substance was $20. Davis did not have any controlled substance on her person. Officer Kyler received word defendant had fled his residence.

¶ 9            Before entering defendant's residence, Officer Kyler walked the perimeter. On the back side of the home, Officer Kyler found a Baggie with suspected cocaine on the ground. The Baggie was within two to three feet of a window. The window was open wide enough for someone to crawl out of it. Officer Kyler testified the field weight for the substance was 6.8 grams. Additionally, Officer Kyler testified all of the evidence found by the VMEG agents was in the southeast bedroom of the residence. Officer Kyler had Agent Houser collect the suspected cocaine from the back of the house and the suspected cocaine under the car.

¶ 10           Davis testified she drove Deline, who was her boyfriend, to 107 Cronkhite Avenue so Deline could get drugs. Davis went inside defendant's residence with Deline. They

went into a room with a bed and a table. She observed Deline hand money to a man she knew as "Barone." Davis identified defendant in the courtroom as Barone. Barone handed Deline something back. When Davis walked out of the doorway, VMEG agents told her to get on the ground. She was not arrested. Deline was arrested and taken into custody. Prior to that night, Davis had been to 107 Cronkhite Avenue four or five times.

¶ 11 Spain testified he observed defendant flee from the rear of the residence. Spain apprehended defendant a block away on Stroup Street.

¶ 12 Agent Houser testified he was the evidence custodian for the search warrant of defendant's residence. His job was to photograph each piece of evidence, document it, put the evidence in a paper bag, and keep the paper bag near him. Agent Houser then transported the paper bag to VMEG headquarters. Agent Houser identified State's exhibit D as two white rocks suspected of being cocaine and weighing 0.2 grams. State's exhibit D was found near Deline. Agent Houser further testified another bigger Baggie of suspected crack cocaine was located outside the southeast window in some rocks. Agent Houser identified State's exhibit E as 6.8 grams of an off-white substance that was suspected to contain crack cocaine. He explained he removed the suspected crack cocaine from its Baggie so that the Baggie could be tested for latent fingerprints. Agent Houser also testified both State's exhibits D and E were in evidence bags and he marked on those bags. He filled in all of the lines, expect for the lines on the chain of custody. Agent Houser identified the State's exhibit F as the original packaging for the State's exhibit E. Agent Houser further testified the remaining evidence was all collected in the southeast bedroom of defendant's residence.

¶ 13 Mayland testified neither the Baggie, which was the State's exhibit F, nor a digital scale contained latent prints suitable for comparison.

- 4 -

¶ 14　　　　Edwards testified she followed the same procedure with State's exhibit E as she did with State's exhibit D. She took custody of the item from the officer who dropped it off at the laboratory and placed it in the drug vault inside the chemistry vault. Edwards analyzed the substance to determine if it had any drug chemistry components. Edwards began by opening the evidence bag at the bottom, so not as to disturb the officer's seal at the top. After removing the substance from the bag, she weighed the substance. Edwards testified the State's exhibit E weighed 5.1 grams and was a substance containing cocaine. She also testified State's exhibit D was 0.2 grams of a substance containing cocaine. After she completed the tests, Edwards placed the substance back into its original package, sealed the package, and returned it to the vault. Additionally, Edwards testified State's exhibit E was in the same or substantially the same condition as when she last saw it.

¶ 15　　　　After the aforementioned testimony, the State moved to admit State's exhibit D. Defendant objected asserting the chain of evidence was insufficient and noted Edwards never rendered an opinion to a reasonable degree of scientific certainty on the identity of the substance. After lengthy arguments, the State presented the parties' stipulation regarding the testimony of James Smutz, the vault custodian. The parties stipulated, *inter alia*, Smutz would testify he removed State's exhibit E from "drop locker 5" and placed it in the VMEG evidence vault. On May 2, 2017, he removed State's exhibit E from the vault and took it to the crime lab in Springfield. On June 1, 2017, Smutz picked up State's exhibit E from the crime lab and placed it back into the vault. On January 8, 2018, Smutz removed State's exhibit E from the vault and took it to the state's attorney's office. Additionally, Smutz would testify the State's exhibit E was in the same or substantially the same condition as when he last observed it. After reading the stipulation, the State moved to reopen evidence to allow further testimony by Agent Houser.

Defendant objected, and the circuit court allowed the State's motion.

¶ 16     In his additional testimony, Agent Houser described State's exhibit E as an off-white colored substance suspected to be crack cocaine. State's exhibit E was found by Officer Kyler, who pointed it out to Agent Houser. Agent Houser testified State's exhibit E was located in the backyard on the ground right below the window of the southeast bedroom. Agent Houser testified he photographed the evidence, put the evidence in a bag, and then put the bag in a paper sack. Agent Houser further testified he followed the same process with all of the other evidence recovered from defendant's residence during the search warrant. All of the evidence was put into the paper sack. Agent Houser transported the paper sack to the VMEG office. No one had access to the paper sack from the time he left defendant's residence to his arrival at the VMEG office. At the VMEG office, Agent Houser placed the paper sack into drop locker number five, which was secured. Only Agent Houser's boss, Master Sergeant Lisa Mitchell, and Smutz had access to the drop locker. The next day, Smutz opened the drop locker for Agent Houser to remove the paper sack and process the evidence inside. Agent Houser explained processing meant putting the evidence into a plastic evidence bag and writing the date the item was recovered on the bag. With State's exhibit E, he removed the crack cocaine from the plastic bag it was in so the plastic bag could be tested for latent fingerprints. He then processed the plastic bag and suspected crack cocaine separately. After processing the evidence, he placed the processed plastic bags back into drop locker number 5. Agent Houser testified State's exhibit E was in the same or substantially the same condition as when he last observed it.

¶ 17     The State again moved to admit the State's exhibit D, which the circuit court admitted over defendant's objection. Thereafter, the State moved to admit the State's exhibit E. Defendant objected based on (1) Edwards not giving an opinion to a reasonable degree of

certainty the substance contained cocaine and (2) the evidence was insufficient to show the exhibit had not been tampered with because of the significant difference between the field weight and the chemist's weight. The court admitted the State's exhibit E over defendant's objection.

¶ 18    When defendant recalled Officer Spain, Officer Spain testified defendant made furtive movements around his pants pocket when Officer Spain approached. Officer Spain recovered a Baggie containing around 2.1 grams of cannabis near defendant. During defendant's case, Officer Kyler testified James Daniels was found in the southeast bedroom.

¶ 19    At the conclusion of the trial, the jury found defendant guilty of both charges. Defendant filed a timely motion for a new trial, challenging, *inter alia*, the circuit court allowing (1) the State to recall Agent Houser to correct errors in the chain of custody and (2) the admission of the State's exhibits D and E when the prosecutor stated he was resting after he sought admission of the exhibits. At a February 21, 2018, hearing, the court denied defendant's motion for a new trial.

¶ 20    On February 28, 2018, the circuit court held the sentencing hearing. Defendant's prior criminal history included the following felonies: (1) a 1996 conviction for possession of a controlled substance with the intent to deliver, (2) a 1999 conviction for possession of a controlled substance, (3) a 2002 conviction for possession of a controlled substance with the intent to deliver, and (4) a 2014 conviction for possession of a controlled substance with the intent to deliver. Based on his prior record, defendant was subject to Class X sentencing. See 730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 21    The State tendered the letter of Nancy O'Kane, who lived in the same block as defendant's residence. Defendant objected, noting O'Kane's impressions of living on the block were not directly related to defendant. The court allowed the letter to be admitted. Defendant

testified on his own behalf and presented the letter of Hallie Bezner, who represented one of defendant's children in a juvenile delinquency case. Defendant testified he lived with his mother and six children. His mother was 62 years old and caring for his children. The State asked for a sentence of 23 years for possession of a controlled substance with the intent to deliver, noting O'Kane's letter, the crime was defendant's fifth adult felony, defendant was on probation when he committed the offense, defendant received compensation for the offense, and a significant sentence is necessary to deter others from setting up drug houses in our community. Defense counsel asked for a six-year sentence, noting his six children, who lived with him, would be seriously harmed by his incarceration. She also noted defendant's conduct did not threaten physical harm and no evidence showed he received compensation in this case.

¶ 22    The circuit court did not find any factors in mitigation but did find four factors in aggravation, including compensation and the threat of serious harm. The court sentenced defendant to 20 years for possession of a controlled substance with the intent to deliver. The court did not sentence defendant on the possession of a controlled substance count, finding it merged with the intent to deliver count.

¶ 23    Defendant filed a motion to reconsider his sentence, asserting, *inter alia*, (1) the circuit court failed to consider no one was harmed or threatened with serious harm by his offense and (2) the court erred by allowing into evidence and considering O'Kane's letter where no evidence showed she was a victim or defendant caused the problems she noted. On May 1, 2018, the circuit court held a hearing on defendant's motion to reconsider. The court denied the motion, noting defendant's criminal history and rejecting the argument defendant's conduct did not threaten harm. Specifically, the court stated, "[I]f you are sitting there telling me that flooding controlled substances into our community by running a drug house is not harmful to

people, I cannot believe such a ludicrous argument."

¶ 24        On May 4, 2018, defendant filed a timely notice of appeal that listed the appealed order as a "Motion to Reconsider." On May 18, 2018, defendant filed a timely amended notice of appeal, listing defendant's conviction and sentence, and the denial of his motion to reconsider his sentence as the appealed order. See Ill. S. Ct. Rs. 606(d), 303(b)(5) (eff. July 1, 2017). Accordingly, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 25        II. ANALYSIS

¶ 26        A. *Voir Dire*

¶ 27        Defendant contends the circuit court erred during *voir dire* because it failed to implement the specific question-and-response framework required by the Illinois Supreme Court. Specifically, he contends the circuit court impermissibly collapsed two of the four principles into two general propositions of law. Defendant acknowledges he has forfeited this issue by not raising it in the circuit court and requests review under the plain-error doctrine (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)).

¶ 28        The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058

- 9 -

(2010).

¶ 29    We begin a plain-error analysis by first determining whether any error occurred at all. *Sargent*, 239 Ill. 2d at 189, 940 N.E.2d at 1059. If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90, 940 N.E.2d at 1059. Under both prongs, the defendant bears the burden of persuasion. *Sargent*, 239 Ill. 2d at 190, 940 N.E.2d at 1059. In this case, defendant claims the error falls under the first prong.

¶ 30    Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) requires the circuit court to do the following:

> "ask each potential juror, individually or in a group, whether the juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section."

Our supreme court has held Rule 431(b) "mandates a specific question and response process." *People v. Thompson*, 238 Ill. 2d 598, 607, 939 N.E.2d 403, 409 (2010). It explained the process as follows:

> "The trial court must ask each potential juror whether he or she understands and

accepts each of the principles in the rule. The questioning may be performed either individually or in a group, but the rule requires an opportunity for a response from each prospective juror on their understanding and acceptance of those principles." *Thompson*, 238 Ill. 2d at 607, 939 N.E.2d at 410.

We review *de novo* whether the circuit court complied with Rule 431(b). *People v. Wilmington*, 2013 IL 112938, ¶ 26, 983 N.E.2d 1015.

¶ 31 Here, the circuit court recited the Rule 431(b) principles in sets of two. After each set, the court asked the potential jurors in groups of seven whether they understood and accepted the principles and gave time for the jurors to indicate a problem. The circuit court noted no one raised a hand.

¶ 32 In support of his contention the circuit court's procedure was erroneous, defendant cites *People v. McCovins*, 2011 IL App (1st) 081805-B, 957 N.E.2d 1194. In *McCovins*, a different district of the appellate court held the circuit court failed to abide by the mandatory question and response process required by Rule 431(b). *McCovins*, 2011 IL App (1st) 081805-B, ¶ 36. There, the circuit court provided the potential jurors with "a broad statement of legal principles interspersed with commentary on courtroom procedure and the trial schedule, and then concluded with a general question about the potential jurors' willingness to follow the law." *McCovins*, 2011 IL App (1st) 081805-B, ¶ 36. The *McCovins* court explained the supreme court's ruling in *Thompson* made it clear that the court's inquiry in the case before it was insufficient to ascertain whether the potential jurors understood and accepted each of the four Rule 431(b) principles. *McCovins*, 2011 IL App (1st) 081805-B, ¶ 36. See also *People v. Hayes*, 409 Ill. App. 3d 612, 627, 949 N.E.2d 182, 195 (2011) (finding circuit court erred by combining the first three principles of Rule 431(b) into one broad principle); *People v. Johnson*,

408 Ill. App. 3d 157, 171, 945 N.E.2d 610, 623 (2010) (concluding the circuit court erred by combining the first three principles of Rule 431(b) into one broad principle and omitting the fourth principle).

¶ 33    However, this court has found the reading of the four specific principles followed by asking the potential jurors if they understood and accepted the four principles did comply with Rule 431(b). *People v. Willhite*, 399 Ill. App. 3d 1191, 1196-97, 927 N.E.2d 1265, 1269-70 (2010). We noted Rule 431(b) has no requirement the circuit court ask separate questions of the potential jurors about each individual principle. *Willhite*, 399 Ill. App. 3d at 1196-97, 927 N.E.2d at 1269-70. In *People v. Staple*, 402 Ill. App. 3d 1098, 1108, 932 N.E.2d 1064, 1073 (2010), this court again found no error in reciting the four principles to the venire and then inquiring into the jurors' understanding and acceptance of those principles in small groups. See also *People v. Wallace*, 402 Ill. App. 3d 774, 777, 932 N.E.2d 635, 637 (2010) (finding the circuit court complied with Rule 431(b) by following its pronouncement of the four principles with a timely questioning as required by Rule 431(b)).

¶ 34    Defendant contends this court should follow *McCovins* instead of *Willhite*. We disagree. First, the facts of this case are substantially different from the facts in *McCovins*. Here, the circuit court only stated two of the principles at the same time, not four. The court also only explained two principles together and did not include additional commentary on courtroom procedure or other matters. Additionally, the jurors were asked whether they understood and accepted the principles. Second, we continue to follow *Willhite* because neither the rule itself nor the supreme court's decision in *Thompson* requires the Rule 431(b) principles to be addressed separately.

¶ 35        The *Thompson* court emphasized a potential juror must be asked whether he or she understands and accepts each of the Rule 431(b) principles and given an opportunity to respond. *Thompson*, 238 Ill. 2d at 607, 939 N.E.2d at 410. In this case, the circuit court did so, and thus we do not find any error. As such, we do not address defendant's plain-error argument.

¶ 36                               B. Chain of Custody

¶ 37        Defendant also contends the circuit court erred by allowing the State to admit the larger amount of cocaine (State's exhibit E) into evidence where the State failed to establish a sufficient chain of custody. Specifically, he claims the State's evidence did not show the police officers took reasonable protective measures to ensure the recovered evidence was inventoried with unique qualifiers to preclude confusion with evidence collected in other cases. Defendant notes the large discrepancy between the field weight and the laboratory weight for the State's exhibit E. The State disagrees arguing it presented sufficient evidence to establish reasonable protective measures were utilized. When reviewing the ruling on the sufficiency of a chain of custody, the reviewing court will reverse the circuit court's ruling only upon finding an abuse of discretion. *People v. Anderson*, 2013 IL App (2d) 111183, ¶ 22, 992 N.E.2d 539. An abuse of discretion occurs only when the circuit court's ruling was arbitrary, fanciful, or unreasonable. *People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 39, 14 N.E.3d 576.

¶ 38        Our supreme court has noted one of the two most important tasks of an appellate court panel when beginning the review of a case is to determine which issue or issues, if any, have been forfeited. *People v. Smith*, 228 Ill. 2d 95, 106, 885 N.E.2d 1053, 1059 (2008). In *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988), our supreme court held a defendant must (1) object to an alleged error at trial *and* (2) raise the alleged error in a posttrial motion to avoid forfeiture of the issue on appeal. At trial, defendant initially objected to the

admission of exhibit D based on an insufficient chain of custody and Edwards's failure to render an opinion to a reasonable degree of scientific certainty on the substance's identity. Over defendant's objection, the circuit court allowed the State to reopen evidence. After the State presented additional testimony, defendant objected to the admission of both State's exhibits D and E. As to the admission of State's exhibit E, defendant objected based on Edwards's failure to render an opinion to a reasonable degree of scientific certainty on the substance's identity and the State's evidence was insufficient to show the exhibit had not been tampered with given the significant difference between the field weight and the chemist's weight. In his posttrial motion, defendant made the following arguments regarding the chain of custody:

> "9. That the Court erred in allowing the admission of evidence of a controlled substance, specifically Exhibits D and E, in that the Assistant State's Attorney Alikhan indicated that the evidence he had left was to admit the exhibits and then rest, at which time Attorney for the Defendant objected to the admission of evidence based on improper chain of custody.

> 10. That the Court erred in allowing the State to recall witness Kedrick Houser to correct errors in chain of custody to allow the admission of exhibits."

Thus, in his posttrial motion, defendant only challenged the circuit court's initial handling of the admission of exhibits D and E. He did not challenge the merits of the circuit court's ultimate admission of the State's exhibits D and E based on the additional testimony of Agent Houser. Accordingly, we find defendant has forfeited his chain of custody argument on appeal, which relates to the circuit court's ruling after the additional testimony by Agent Houser.

¶ 39       Additionally, as the appellant, plaintiff "ha[d] the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99

- 14 -

Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959. Here, the record on appeal lacks State's exhibits C through M or even a photograph of those exhibits. Without at least one of those exhibits, this court is unable to ascertain whether the State's exhibits that were recovered from defendant's residence lacked a label identifying the specific case as alleged by defendant. Thus, we find defendant has also failed to provide a sufficient record to review his claim the State's exhibit E was not assigned any unique identification number or mark.

¶ 40        Thus, we decline to address defendant's chain of custody argument.

¶ 41                            C. Sentencing

¶ 42        Defendant last contends the circuit court erred by (1) admitting Nancy O'Kane's letter as a victim impact statement and (2) considering defendant's conduct caused serious harm as an aggravating factor because it was a factor inherent in the offense of possession of a controlled substance with intent to deliver. Defendant further argues his right to a fair sentencing trial was denied by the cumulative errors. Since the admission of O'Kane's letter itself cannot justify reversal of defendant's sentence (see *People v. Raney*, 2014 IL App (4th) 130551, ¶ 40, 8 N.E.3d 633) and the State uses the letter in justifying the circuit court's finding defendant's conduct threatened serious harm, we address defendant's claim he was denied a fair sentencing hearing based on the cumulative errors.

¶ 43        The State does not refute defendant's argument O'Kane was not a victim of a violent crime under the Rights of Crime Victims and Witnesses Act. See 725 ILCS 120/3(a), (c) (West 2016). Instead, it argues the only requirement for admission of evidence in a sentencing hearing is the evidence must be reliable and relevant and notes hearsay is reliable when

corroborated by other evidence.  However, this court has stated that, "while hearsay evidence is allowable at a sentencing hearing, such evidence should be presented in the form of live testimony, rather than hearsay allegations contained in an attachment to a presentence report." *Raney*, 2014 IL App (4th) 130551, ¶ 44.  In the latter situation, the sentence cannot stand if the defendant was prejudiced by the procedure used or the material considered by the circuit court. *Raney*, 2014 IL App (4th) 130551, ¶ 44.

¶ 44        In *Raney*, 2014 IL App (4th) 130551, ¶ 45, this court found the circuit court erred by considering the written statement by the defendant's ex-wife's son, which the probation department had attached to defendant's presentence investigation report.  We noted the son could have been called as a witness to testify about the defendant's misconduct, as such behavior reflected on the defendant's character.  *Raney*, 2014 IL App (4th) 130551, ¶ 45.  While we found the son's statement improper, this court concluded the circuit court would have imposed the same sentence even if it had never read the improper statement, and thus the defendant could not show unfair prejudice or a violation of due process.  *Raney*, 2014 IL App (4th) 130551, ¶ 51. There, the State did not rely on the son's statement when making its sentencing arguments. *Raney*, 2014 IL App (4th) 130551, ¶ 49.  In addition to the son's statement, the circuit court also considered the defendant's ex-wife's proper victim impact statement, the defendant's lengthy criminal history, and the circumstances of the crime.  *Raney*, 2014 IL App (4th) 130551, ¶ 50.  It also found the crime resulted from conduct likely to recur and the defendant was unlikely to comply with terms of probation.  *Raney*, 2014 IL App (4th) 130551, ¶ 50.

¶ 45        Regarding aggravating factors, the circuit court must not consider an element that is inherent in the offense as an aggravating factor when sentencing a defendant.  *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18.  "Nevertheless, the trial judge 'need not unrealistically

avoid any mention of such inherent factors, treating them as if they did not exist.' " *Brown*, 2019 IL App (5th) 160329, ¶ 18 (quoting *People v. O'Toole*, 226 Ill. App. 3d 974, 992, 590 N.E.2d 950, 962 (1992)). When reviewing a sentence for an alleged error based upon the consideration of an improper factor in aggravation, the reviewing court considers the record as a whole and does not focus merely on a few words or statements by the trial judge. *Brown*, 2019 IL App (5th) 160329, ¶ 18. We note "[a]n isolated remark made in passing, even though improper, does not necessarily require that [the] defendant be resentenced." (Internal quotation marks omitted.) *Brown*, 2019 IL App (5th) 160329, ¶ 18 (quoting *People v. Reed*, 376 Ill. App. 3d 121, 128, 875 N.E.2d 167, 174 (2007)). To receive a new sentencing hearing, the defendant must show more than the mere mentioning of the improper factor in aggravation; rather, the defendant must demonstrate the trial judge relied upon the improper factor in fashioning the defendant's sentence. *Brown*, 2019 IL App (5th) 160329, ¶ 18. We will not disturb a circuit court's sentencing decision on appeal unless the decision represents an abuse of discretion. *Brown*, 2019 IL App (5th) 160329, ¶ 18.

¶ 46        Here, the circuit court stated the following about aggravating factors:

> "When I look at the factors in aggravation, I find that—I think the use of drugs is threatening, so I find that your conduct caused or threatened serious harm. I find that you received compensation for committing the offense because that's what the testimony at the trial was. I find that you have a history of prior delinquency or criminal activity, that the sentence is necessary to deter others from committing the same crime."

The court also noted defendant was on probation when he committed the offense.

¶ 47        Both the receipt of compensation and the threat of serious harm are usually

- 17 -

inherent in the offense of possession of controlled substance with the intent to deliver. *People v. McCain*, 248 Ill. App. 3d 844, 851-52, 617 N.E.2d 1294, 1299-1300 (1993). Thus, for the circuit court to properly consider threat of serious harm, the record had to demonstrate the defendant's conduct had a greater propensity to cause harm than that inherent in the offense itself. *McCain*, 248 Ill. App. 3d at 852, 617 N.E.2d at 1300. With the receipt of compensation, the court can consider the amount of profit a defendant derives from a criminal enterprise and the actions taken to maximize that amount, as they can reflect on proper sentencing considerations. *McCain*, 248 Ill. App. 3d at 851, 617 N.E.2d at 1300.

¶ 48    In asserting the circuit court properly considered the two aggravating factors, the State relies on O'Kane's letter. However, O'Kane's letter did not fall under the Rights of Crime Victims and Witnesses Act, and the letter was not live testimony. The State also cited O'Kane's letter in making its sentencing recommendation to the circuit court. Without O'Kane's letter, the evidence does not show defendant's conduct threatened harm beyond that inherent in the offense or the compensation he received was different from that inherent in the offense. Here, defendant was not armed with a weapon, and he did not act violently. Further, we disagree with the State's argument selling drugs out of one's home instead of elsewhere is an effort to maximize profits. Here, defendant was prejudiced by O'Kane's letter, and the error was compounded when the circuit court considered two aggravating factors inherent in the offense. Thus, we find defendant was denied a fair sentencing hearing and is entitled to a new sentencing hearing.

¶ 49                               III. CONCLUSION

¶ 50    For the reasons stated, we reverse defendant's sentence, affirm the Vermilion County circuit court's judgment in all other respects, and remand the cause for a new sentencing hearing.

- 18 -

¶ 51        Affirmed in part and reversed in part; cause remanded with directions.