NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250217-U

NOS. 4-25-0217, 4-25-0218 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 10, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| SHAWN FRYE, | ) | Nos. 20CF431 |
| Defendant-Appellant. | ) | 21CF1047 |
| | ) | |
| | ) | Honorable |
| | ) | Christopher G. Perrin, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court reversed the trial court's first-stage dismissal of defendant's postconviction petition and remanded the matter for second-stage proceedings because defendant stated the gist of a constitutional claim.

¶ 2    In March 2021, defendant, Shawn Frye, pursuant to a plea agreement, pleaded guilty in Sangamon County case No. 20-CF-431 to domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2020)). The trial court sentenced defendant to 30 months of probation and 337 days in jail, with credit for time served.

¶ 3    In December 2021, the State charged defendant in Sangamon County case No. 21-CF-1047 with armed robbery (*id.* § 18-2(a)(1)), aggravated robbery (*id.* § 18-1(b)(1)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). Thereafter, the State filed a petition to revoke defendant's probation.

¶ 4        In July 2022, pursuant to a plea agreement, defendant admitted to violating his probation in case No. 20-CF-431 and pleaded guilty in case No. 21-CF-1047 to robbery (*id.* § 18-1(a)) and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). The trial court sentenced defendant to two 4-year sentences, to run concurrently, with 337 days of sentencing credit in case No. 20-CF-431 and 127 days of credit in case No. 21-CF-1047.

¶ 5        In November 2024, defendant *pro se* filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)), alleging, among other things, that he was denied his right to due process because he did not receive the benefit of his bargain from the plea agreement he entered into with the State in July 2022. The trial court summarily dismissed the petition, finding the claims were frivolous and patently without merit.

¶ 6        Defendant appeals, arguing the trial court erred by summarily dismissing his postconviction petition because he stated the gist of a constitutional claim. For the reasons that follow, we reverse and remand for second-stage proceedings.

¶ 7                            I. BACKGROUND

¶ 8                    A. The Relevant History of This Case

¶ 9              1. *The Charges and Guilty Plea in Case No. 20-CF-431*

¶ 10        In April 2020, the State charged defendant with domestic battery, a Class 4 felony (720 ILCS 5/12-3.2(a)(1), (b) (West 2020)), and unlawful restraint, a Class 4 felony (*id.* § 10-3(a), (b)) in case No. 20-CF-431. In March 2021, defendant entered into a fully negotiated plea agreement. In exchange for his guilty plea to domestic battery, the State (1) dismissed the unlawful restraint count and (2) recommended a sentence of 30 months of probation and 337 days in jail, with credit for time served. The trial court accepted defendant's guilty plea and sentenced him pursuant to the plea agreement.

¶ 11                    2. *The Charges and Guilty Plea in Case No. 21-CF-1047*

¶ 12          In December 2021, a grand jury indicted defendant on armed robbery, a Class X felony (*id.* § 18-2(a)(1), (b)) (count I), aggravated robbery, a Class 1 felony (*id.* § 18-1(b)(1), (c)) (count II), and unlawful possession of a weapon by a felon, a Class 2 felony (*id.* § 24-1.1(a), (e)) (count III) in case No. 21-CF-1047.

¶ 13          In January 2022, the State filed a petition to revoke defendant's probation in case No. 20-CF-431, alleging he (1) was indicted in case No. 21-CF-1047, (2) missed probation meetings and a scheduled home visit, (3) tested positive for cocaine, and (4) failed to complete a substance abuse assessment.

¶ 14          On July 29, 2022, the trial court conducted a hearing on the State's petition to revoke. Defendant admitted to violating his probation in case No. 20-CF-431 by missing probation meetings. In case No. 21-CF-1047, the State moved to amend count II from aggravated robbery to robbery, a Class 2 felony (*id.* § 18-1(a), (c)), and defendant pleaded guilty to counts II and III. The parties agreed to a four-year sentence in each case, to be served concurrently. As to sentence credit, the State explained:

> "[D]efendant in total would be given credit from the dates of April 29 of 2020 to March 31 of 2021 in [case No. 20-CF-431], and then be given days credit starting from March 25 of this year to today's date in [case No.] 21-CF-1047. I will make a calculation as to total days credit; however, it would be 337 days in [case No. 20-CF-431]. All fines and fees will be converted to a civil judgment. It would be 549 in total."

¶ 15          When the trial court asked defendant if he understood the State's offer, defendant stated he did not understand the dates relating to his sentence credit. The following exchange then

occurred between the court and the parties:

"MS. HAYES [(DEFENSE COUNSEL)]: Your Honor, as to the dates that he's getting credit for time served, would that be from April 29, 2020, through March 21 of 2021 and March 25, 2022, through today's date?

THE COURT: So with respect to [case No.] 21-CF-1047, he will receive credit from March 25 of 2022 through today's date.

MR. SHAW [(ASSISTANT STATE'S ATTORNEY)]: That's 127 days calculated.

THE COURT: Okay. So that's 127 days calculated. On [case No. 20-CF-431], he will receive credit for 337 days?

MR. SHAW: That's correct, Your Honor. That's calculated from April 29 of 2020 to March 31 of 2021.

MS. HAYES: So he would get credit for all of the time; is that correct?

THE COURT: Mr. Shaw?

MR. SHAW: Yes. The intent of the sentence is that he would be getting credit in the aggregate of approximately 460 days. As to the totality of the sentence, as it's running concurrent, it goes, all that goes against it.

MS. HAYES: Right.

[DEFENDANT]: All right. I understand now, Your Honor."

¶ 16    The trial court accepted defendant's guilty plea and sentenced him pursuant to the plea agreement. The court subsequently issued sentencing orders in both cases. The sentencing order in case No. 20-CF-431 stated, "The court *** finds that the defendant is entitled to receive credit for time actually served in custody (of 337 days as of the date of this order) from 4/19/2020

- 4 -

to 3/31/2021." The sentencing order in case No. 21-CF-1047 entered a sentence for robbery, a Class 1 felony (*id.* § 18-1(a)). The sentencing order stated, "The Court *** finds that the defendant is entitled to receive credit for time actually served in custody (of 126 days as of the date of this order) from 3/25/2022 to 7/29/2022."

¶ 17                               B. The Postconviction Proceedings

¶ 18                               1. *The Motion for Order Nunc Pro Tunc*

¶ 19        In November 2024, defendant *pro se* filed a motion for order *nunc pro tunc*. He claimed he was entitled to 463 days of sentence credit pursuant to the July 2022 plea agreement. He also claimed his robbery conviction in case No. 21-CF-1047 was erroneously entered as a Class 1 felony when the agreement was for a Class 4 felony. Defendant attached to the motion the sentencing judgments and three sentence-calculation worksheets prepared by the Illinois Department of Corrections (IDOC). A handwritten note on the first page of the IDOC worksheets stated: "I have attached both of your original [calculation] sheets (before you earned EPSC [(earned program sentence credit)] in IDOC). I have included notes on both about how your custody date was calculated. Because they are concurrent they are calculated entirely independent of each other."

¶ 20        The calculation worksheet titled "MSR Violators Sentenced Under 1978 Law," dated May 29, 2024, included, in part, the following:

"**(Step 1) (A)**

|   | Yr. | Mo. | Day |   |
|---|-----|-----|-----|---|
|   | 24  | 4   | 14  | (Recustody/New Sentence Date) |
| – | 24  | 1   | 15  | (Date D.A.V.) |
|   |     | 2   | 29  | (Time Lost – MSR Viol.) |

* * *

**(Step 3) Mittimus NO.** <u>20CF431/21CF1047[]</u>
PROJECTED OUT DATE

|        | Yr. | Mo. | Day |                                |
|--------|-----|-----|-----|--------------------------------|
|        | 22  | 3   | 25  | (Custody Date)                 |
| +      | 2   |     |     | (Sentence Less GCC/ESSC)       |
|        | 24  | 3   | 25  | (Proj. Out Date)               |
| + or – |     | 3   | 3   | (Previous Time – Lost/Awarded) |
|        | 23  | 12  | 22  | (Proj. Out Date)               |
| +      | 4   |     |     | (MSR Term)                     |
|        | 27  | 12  | 22  | (Maximum Date)                 |
| +      |     | 2   | 29  | (Time Lost – MSR Viol.)        |
|        | 28  | 3   | 21  | (Discharge Date)               |

**(Step 4)**

|   | Yr. | Mo. | Day |                              |
|---|-----|-----|-----|------------------------------|
|   | 28  | 3   | 21  | (Discharge Date)             |
| – | 24  | 4   | 14  | (Recustody/New Sentence Date)|
|   | 3   | 11  | 7   | (Time to Serve)              |
| – | 1   | 11  | 19  | (GCC/ESSC)                   |
|   | 1   | 11  | 18  | (Time Left to Serve)         |

**(Step 5)**

|   | Yr. | Mo. | Day |                              |
|---|-----|-----|-----|------------------------------|
|   | 24  | 4   | 14  | (Recustody/New Sentence Date)|
| + | 1   | 11  | 18  | (Time Left to Serve)         |
|   | 26  | 4   | 2   | (Proj. Discharge Date)"      |

¶ 21 The calculation worksheet in case No. 21-CF-1047, dated August 11, 2022, listed the new custody date as March 25, 2022, the projected out date as March 25, 2024, and the mandatory out date as March 25, 2026. A handwritten notation stated: "Per the judgement [*sic*] order, you were awarded jail credits from 3/25/22 to 7/29/22 (the day you were sentenced); therefore, your custody date on this case is 3/25/22."

¶ 22 The calculation worksheet in case No. 20-CF-431, dated August 12, 2022, listed the new custody date as August 6, 2021, the projected out date as August 6, 2023, and the mandatory out date as August 6, 2025. A written notation in the bottom left corner of the page

read, "NON CONTROLLING." Two additional handwritten notes stated: "On this case, you were awarded credit from 4/19/20-3/31/21 which is 11 months, 13 days," and, "We *** subtracted 11 months, 13 days from the date you were sentenced to arrive at a custody date of 8/6/21."

¶ 23                              2. *The Motion for a Corrected Mittimus*

¶ 24          On November 1, 2024, defendant *pro se* filed a motion for a corrected mittimus, arguing he was entitled to time served while on probation in case No. 20-CF-431.

¶ 25                              3. *The Postconviction Petition*

¶ 26          On November 26, 2024, defendant *pro se* filed a postconviction petition. The petition alleged, among other things, that his constitutional rights were violated because (1) he was sentenced to the incorrect class of felony on count II in case No. 21-CF-1047 and (2) the full amount of sentence credit was not applied to his sentence, contravening the parties' July 2022 plea agreement.

¶ 27          In January 2025, the trial court entered a written order summarily dismissing the petition as frivolous and patently without merit.

¶ 28          This appeal followed.

¶ 29                              II. ANALYSIS

¶ 30          Defendant appeals, arguing the trial court erred by summarily dismissing his postconviction petition because he stated the gist of a constitutional claim. We reverse and remand for second-stage proceedings.

¶ 31                              A. The Applicable Law

¶ 32                              1. *The Post-Conviction Hearing Act*

¶ 33          Under the three-stage process provided by the Act, criminal defendants may challenge their convictions based on a substantial violation of their state or federal constitutional

rights. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). At the first stage, the trial court shall, within 90 days after the petition is filed, independently review the petition and summarily dismiss the petition if the court determines it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2024).

¶ 34 A petition is frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *People v. Bowens*, 2013 IL App (4th) 120860, ¶ 11. In other words, "[a] post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' " *Edwards*, 197 Ill. 2d at 244 (quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996), citing *People v. Porter*, 122 Ill. 2d 64, 74 (1988)). When reviewing a petition, "the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding[,] and any transcripts of such proceeding." 725 ILCS 5/122-2.1(c) (West 2024).

¶ 35 "Because most petitions are drafted at this stage by defendants with little legal knowledge or training, this court views the threshold for survival as low." *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The first-stage dismissal of a postconviction petition is reviewed *de novo*. *People v. White*, 2020 IL App (4th) 160793, ¶ 26.

¶ 36 2. *Benefit-of-the-Bargain Claim*

¶ 37 A defendant may challenge the constitutionality of his guilty plea by claiming "(1) that the plea of guilty was not made voluntarily and with full knowledge of the consequences, and (2) that [the] defendant did not receive the benefit of the bargain he made with the State when he [pleaded] guilty." *People v. Whitfield*, 217 Ill. 2d 177, 183-84 (2005). A defendant's due process rights may be implicated if he does not receive the benefit of his bargain. *Id.* at 189. " '[W]hen a

plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *People v. McDermott*, 2014 IL App (4th) 120655, ¶ 26 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). Accordingly, if a specified amount of sentence credit is included in the terms of the plea agreement, the defendant is entitled to the amount of sentence credit that was promised. *Id.* ¶ 27. This court looks to the statements of the parties at the plea hearing to ascertain the terms of the plea agreement. *People v. Clark*, 2011 IL App (2d) 091116, ¶ 10.

¶ 38                                    B. This Case

¶ 39        Defendant argues the trial court should not have dismissed his postconviction petition at the first stage of postconviction proceedings because it was not frivolous or patently without merit. Specifically, he asserts that his petition stated the gist of a constitutional claim in that, in violation of his right to due process, he was denied the benefit of his bargain because he (1) did not receive the full amount of sentence credit that was promised and (2) was sentenced to the incorrect class of felony in case No. 21-CF-1047.

¶ 40                              1. *Defendant's Sentence-Credit Claim*

¶ 41        In his *pro se* petition, defendant alleged:

> "The State did not backdate the begining [*sic*] date in 20-CF-431 to match the begining [*sic*] date 21-CF-1047 which rendered one case controling [*sic*] and the other case non controling [*sic*] which made it seem so I would only be credited for 126 days which was not the plea agreement."

¶ 42        At the July 2022 hearing, the parties agreed that defendant would receive 337 days of sentence credit in case No. 20-CF-431 and 127 days of credit in case No. 20-CF-1047, for a total of 464 days. The State clarified, "The intent of the sentence is that [defendant] would be

getting credit in the aggregate of approximately 460 days. As to the totality of the sentence, as it's running concurrent, it goes, all that goes against it." Defendant and his counsel agreed to this term on the record. Thus, we find it is arguable that 464 days of sentence credit was an essential term of the plea agreement. See *id.*

¶ 43 Importantly, the standard at the first stage is whether the petition has "an arguable basis in law or in fact." *Bowens*, 2013 IL App (4th) 120860, ¶ 11. Defendant has met that low threshold here because the record fails to rebut the claim that he did not receive the full 464 days of sentence credit. See *People v. Coleman*, 183 Ill. 2d 366, 381 (1998) ("[A]ll well pleaded facts are to be taken as true at [the first stage]."). The two sentencing orders in case Nos. 20-CF-431 and 21-CF-1047 state the correct amount of presentence custody credit accrued in each case individually, but both orders are silent as to how the credits apply in the context of the sentences running concurrently.

¶ 44 Further, the record includes three sentence-calculation worksheets prepared by IDOC, which defendant attached to his motion for order *nunc pro tunc*. It is similarly unclear from these worksheets whether the full 464 days of sentence credit were applied to defendant's concurrent four-year sentences. Accordingly, it is arguable that defendant has not received the full amount of sentence credit that was promised to him under the terms of the July 2022 plea agreement.

¶ 45 The State's arguments in response are unavailing. The State asserts defendant received the benefit of his bargain because he received 337 days of sentence credit when he initially pleaded guilty in case No. 20-CF-431 in March 2021 and was later granted 127 days of sentence credit when he pleaded guilty in case No. 21-CF-1047 in July 2022. Under this interpretation, defendant would only receive 127 days of sentence credit on his new sentence. However, this was

not what the parties agreed to at the July 2022 hearing. The State explicitly stated defendant would receive approximately 460 days' credit to be applied to his concurrent four-year sentence.

¶ 46     The State also asserts that the claim is not justiciable and should be raised in an Illinois Supreme Court Rule 472 (eff. Feb. 1, 2024) motion to correct the sentencing judgment. This argument also fails because defendant has raised a benefit-of-the-bargain claim, which is cognizable under the Act as a collateral attack on the constitutionality of his plea agreement. See *Whitfield*, 217 Ill. 2d at 184-85.

¶ 47     Because defendant's *pro se* postconviction petition stated the gist of a constitutional claim, we reverse the trial court's first-stage dismissal of his petition.

¶ 48                    2. *Defendant's Felony-Classification Claim*

¶ 49     Because the Act does not permit the partial summary dismissal of a postconviction petition, we need not address defendant's additional claim that he was sentenced to the incorrect class of felony on count II in case No. 21-CF-1047. See *People v. Patton*, 315 Ill. App. 3d 968, 974 (2000) ("[T]he language of section 122-2.1 of the Act does not allow for the partial dismissal of a defendant's *pro se* petition for postconviction relief."). Accordingly, the entire petition must be remanded for second-stage proceedings, regardless of the merits of the remaining claim.

¶ 50                    III. CONCLUSION

¶ 51     For the reasons stated, we reverse the trial court's judgment and remand for second-stage proceedings.

¶ 52     Reversed and remanded.